In the Matter of ROBERT LAVANANT et al., Appellants, v STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL et al., Respondents.

First Department, July 20, 1989

APPEARANCES OF COUNSEL

*Robert H. Berman* of counsel *(Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C.,* attorneys), for appellants.

*Richard Hartzman* of counsel *(Dennis B. Hasher,* attorney), for respondents.

### OPINION OF THE COURT

SMITH, J.

Petitioner landlords Robert and Suzanne Lavanant appeal from a judgment of the Supreme Court, New York County, which dismissed their petition seeking review of a determination by respondent State Division of Housing and Community Renewal (the Division) granting treble damages to a tenant on rent overcharges collected by petitioners after April 1, 1984.

The issue here is whether the respondent Division properly imposed treble damages upon petitioner landlords pursuant to title 26 of the Administrative Code of the City of New York upon a finding of a rent overcharge where the complaint was filed by the tenant prior to April 1, 1984, the effective date of section YY51-6.0.5 (now § 26-516) of said code. Petitioners do not challenge the Division's determination that their tenant was in fact overcharged both before and after April 1, 1984.

Petitioners are the owners of an apartment building at 228

East 75th Street in Manhattan which is subject to New York City's Rent Stabilization Law. In November 1981, G. Duane Peters, the tenant of apartment 2A, filed a rent overcharge complaint with the Conciliation and Appeals Board (CAB), the predecessor agency to the Division. The complaint was based in part on an allegation that petitioners had signed two leases on the same date for two different tenants, one at $370 and the other at $422 per month, and that subsequent increases were based upon the higher rent even though the first tenant had never occupied the apartment. In answer to the complaint petitioners submitted the leases of prior tenants of the apartment from 1976, when the apartment became subject to the Code of the Rent Stabilization Association of New York City, Inc., and copies of bills for new equipment and improvements to the apartment made immediately prior to Mr. Peters' occupancy. Petitioners indicated that the first lease referred to by Peters was an accommodation for the then tenant-in-occupancy who wished to remain in the apartment for an additional month. This lease was for one year. The subsequent tenant executed a two-year lease covering that same period since she was willing to wait a month for the apartment to be vacated. The District Rent Administrator of the Division requested additional information and in a "Final Notice of Pending Default" sent to petitioners on September 12, 1986, stated: "Treble damages will be imposed on any overcharge occurring after April 1, 1984 for which the owner fails to satisfy the Division that the overcharge was not willful."

On February 3, 1987, some five years after the initial complaint, the District Rent Administrator issued an order finding that since December 15, 1979 the tenant had been overcharged in rent by $1,645.47 and in security deposits by $22.27, and directing a refund of the overcharges with interest.

On February 11, 1987 the tenant filed a "Petition for Administrative Review", claiming that the District Rent Administrator's order should be modified to award him treble damages pursuant to the Rent Stabilization Law (Administrative Code) § YY51-6.0.5 (now § 26-516) since petitioners had not established by a preponderance of the evidence that the overcharges were not willful. Petitioners responded, claiming, *inter alia,* that the tenant's complaint was filed prior to April 1, 1984, the effective date of section YY51-6.0.5; that they had not received notice of the possible imposition of treble damages; and that their responsiveness to the original complaint,

the nominal amount of the overcharge and the disallowance of certain claimed improvements, all support a finding that the overcharge was not willful.

Based upon these submissions and a review of the entire record, the Division, on June 26, 1987, issued an order directing treble damages as to the post-April 1, 1984 overcharge of $696.81, stating in part:

"on September 12, 1986 the Division sent a correctly addressed Final Notice of Pending Default to the owner. This notice stated, in part: 'Treble damages will be imposed on any overcharge occurring after April 1, 1984 for which the owner fails to satisfy the Division that the overcharge was not willful.' * * *

"Nothing in the record or in the owner's answer to this Petition indicates that the owner has met its burden of proving the overcharges were not willful. * * * Accordingly, the Administrator's Order is hereby modified by replacing the $696.81 post-April 1, 1984 actual overcharge (without interest) by three times that amount, $2,090.43, and by subtracting the $49.46 in interest which the Administrator imposed in lieu of treble damages. * * *

"[a]lthough the complaint was filed prior to the effective date of the Act (April 1, 1984), the DHCR (Division) served the owner with the * * * Final Notice of Pending Default, which clearly advised the owner of the penalty of treble damages unless willfulness was disproved.

"The Commissioner notes that this Order is not based on the tenant's assertion that the fact that the owner signed two leases on one day proves the willfulness of the overcharges. The record supports the owner that the first lease was a renewal lease to the then-current tenant who was planning to vacate and the second lease was a vacancy lease to a new tenant.

"Finally, the Commissioner notes that since both of the above-mentioned leases began in a single guideline period the possibility of 'piggybacking' (compounding rent increases in a single guideline period) arises and it is the general rule that no treble damages are imposed if that is the sole source of the overcharge. * * * However, in the present case no piggybacking occurred. Indeed, there was a greater overcharge in the first of the two leases in question than in the second lease.

This proves that piggybacking was not the source of the overcharges."

Thereafter, the Lavanants commenced a proceeding pursuant to CPLR article 78 to vacate the Division's award of treble damages. In the judgment appealed from, the IAS court denied the petition, finding that the Division's determination had a rational basis and that treble damages may be awarded to a tenant for overcharges accruing on or after April 1, 1984 even though the tenant's complaint was filed prior to that date. The court also noted that willfulness is "knowing", not necessarily malicious, conduct and that since the petitioners failed to supply the Division with "any evidence whatsoever on the issue" of willfulness, there was no need to hold a hearing.

This appeal followed.

■ Petitioners' assertion that the Division lacks the statutory authority to impose treble damages upon them because their tenant's complaint was filed prior to April 1, 1984, the effective date of section YY51-6.0.5 of the Administrative Code (now § 26-516), is without merit. *(Matter of Cenpark Realty Co. v State Div. of Hous. & Community Renewal,* 131 AD2d 980 [1st Dept 1987], *lv denied* 70 NY2d 609.) In *Cenpark,* the State Division of Housing and Community Renewal determined that a tenant had been overcharged and directed a refund, including treble damages for the period after April 1, 1984. Although informed that she could file a petition for administrative review of the said order, the landlord failed to do so. Instead, she sought relief by means of a CPLR article 78 proceeding in the Supreme Court. That court denied relief for failure to exhaust administrative remedies and this court affirmed.

Section 26-516 (a) of the Administrative Code provides that a landlord who has been found by the Division to have collected rent overcharges "shall be liable to the tenant for a penalty equal to three times the amount of such overcharge." However, "if the owner establishes by a preponderance of the evidence that the overcharge was not willful", the penalty is to be assessed at only the amount of the overcharge plus interest. Moreover, section 26-516 (a) (2) proscribes the award of treble damages "based upon an overcharge having occurred more than two years before the complaint is filed or * * * which occurred prior to April first, nineteen hundred eighty-

four."* Thus, as notice to petitioners was given, the Division could impose a treble damage penalty for overcharges occurring after April 1, 1984.

■ Next, petitioners contend that the respondents erroneously determined that the overcharge to Peters was "willful", since such overcharge was due to their belief that they were entitled to increases for certain improvements (Code of the Rent Stabilization Association of New York City, Inc. § 20 [C] [1]), which improvements were eventually disallowed by respondents. However, petitioners' contention is belied by the record. The Division specifically found that the overcharges originated in October 1978 with the first of the aforementioned two prior leases for the apartment and was not due, as claimed by petitioners, to an increase based upon the cost of lumber, a new lock and an air-conditioner charge, added with other allowed improvements at the time of petitioners' lease to Mr. Peters. The origin of the overcharge in 1978 is made obvious by the record; it was carried through subsequent leases and was modified through deductions for allowable improvements, finally leading to an overcharge of $9.80 per month in the first lease to Mr. Peters in December 1979. Petitioners offered no evidence that the overcharges in the prior leases were not willful, nor do they do so now.

Willfulness is "intentionally doing an act and knowing that the act is being done." *(Matter of Old Republic Life Ins. Co. v Thacher,* 12 NY2d 48, 55 [1962].) Petitioners have not disproven that commencing in 1978 they consciously and knowingly charged their tenants the improper rent. A rational basis supports respondents' award of treble damages which, therefore, must stand. *(Matter of Pell v Board of Educ.,* 34 NY2d 222 [1974].)

For the first time, in their reply brief before this court, petitioners contend that the prior leases should not have been considered by the Division because the law has changed and no longer requires a landlord to produce a complete rent history. The old law, section 42 (A) of the Code of the Rent Stabilization Association of New York City, Inc., promulgated pursuant to former section YY51-6.0 of the Administrative Code, provided in relevant part as follows: "It shall be the

---

* Prior to the enactment of section YY51-6.0.5 (now § 26-516) a tenant could commence a civil action for treble damages against an overcharging landlord. The burden of proving nonwillfulness was on the landlord. Such civil remedy is still available. (Administrative Code § 26-413 [d] [2] [formerly § Y51-11.0 (d) (2)].)

duty of an owner to retain all leases in effect May 31, 1968 or thereafter and produce them on demand of the Association [Rent Stabilization Association], the CAB [Conciliation and Appeals Board], the Housing and Development Administration or a new purchaser for as long as the Rent Stabilization Law or any extension thereof is in effect."

Under section 26-516 (g) of the Administrative Code of the City of New York, which was the relevant law in effect on February 3, 1987, the date of the Division's order, the petitioners were not required to produce rent records further back than April 1, 1980. In this regard section YY51-6.0.5 (g) (now § 26-516 [g]), effective April 1, 1984, provides: "Any owner who has duly registered a housing accommodation * * * shall not be required to maintain or produce any records relating to rentals of such accommodation for more than four years prior to the most recent registration or annual statement for such accommodation."

In their reply brief the petitioners also rely on *Matter of J.R.D. Mgt. Corp. v Eimicke* (148 AD2d 610). There, the Commissioner of the New York State Division of Housing and Community Renewal had awarded a rent roll-back to a tenant after the landlord failed to submit a complete rent history for the apartment pursuant to Code of the Rent Stabilization Association of New York City, Inc. § 42 (A). The Second Department reversed a determination, made in a CPLR article 78 proceeding, which upheld the Commissioner's action and remitted the matter to the Commissioner. The Second Department ruled that the decision of the Commissioner to apply the law in effect at the time of the filing of the rent overcharge complaint (Code of the Rent Stabilization Association of New York City, Inc. § 42 [A], which required the landlord to submit complete rent records) rather than the law in effect at the time of the determination (Administrative Code § YY51-6.0.5 [g] [now § 26-516 (g)], which requires the landlord to submit rent records for only the four-year period prior to the most recent registration) was arbitrary and capricious since it was not based upon any rational reason.

Respondents in a supplemental surreply brief filed upon leave by this court argue that, contrary to the holding in *Matter of J.R.D. Mgt. Corp. (supra),* its application of the law as it existed at the time of the complaint, under these circumstances, was rational, and consistent with both the legislative intent of the Omnibus Housing Act (L 1983, ch 403) and with the established policies of the Division and of its predecessor

agency. Respondent contends that the holding in *Matter of J.R.D. Mgt. Corp. v Eimicke (supra)* overlooked not only controlling case law and legislative intent but the disastrous effects that the holding would have on some 5,000 cases pending before the Division.

We find that the administrative determination that complete rent histories should be required for cases filed prior to April 1, 1984 has a rational basis.

First, the policy appears to be in accord with legislative intent. The Omnibus Housing Act (the Act) which created what is now section 26-516 (g) was enacted on June 30, 1983. The Act established for the first time a four-year limitation on the calculation of rent overcharges and, concomitantly, on the number of years for which rental records were required. The effective date of section 26-516 (g) was delayed until April 1, 1984 in order to enable tenants whose claims for overcharges had accrued more than four years prior to the enactment time to file claims under the existing law. Widespread publicity, including a "Press Advisory of the Attorney-General Robert Abrams" encouraging tenants to file prior to the April 1, 1984 "deadline", resulted in some 30,000 filings.

Prior to that time, the policy of the Conciliation and Appeals Board, adopted August 18, 1982, was to require that all landlords supply a complete rental history. Section 20 of the Omnibus Housing Act provides for the continuation of proceedings by the Division "in the same manner * * * as if conducted and completed by [the] conciliation and appeals board." Similarly, section 19 provides for the continuance of rules and regulations "until duly modified or abrogated by the division". Pursuant to sections 19 and 20, the Conciliation and Appeals Board on February 16, 1984 voted to continue the policy of requiring that complete records to 1974 be produced in connection with all overcharge complaints filed prior to April 1, 1984. This policy finds support in *Matter of 61 Jane St. Assocs. v New York City Conciliation & Appeals Bd.* (108 AD2d 636 [1st Dept 1985], *affd* 65 NY2d 898 [1985]). There this court upheld a determination by the motion court that an owner who had purchased a building at a relatively recent date was obliged to supply a total rent history to the Conciliation and Appeals Board on an issue involving a rent overcharge and that failure to do so could result in a lowering of the rent and a substantial back-rent payment.

On May 1, 1987, the Division promulgated section 2526.1 (a) (4) of the Rent Stabilization Code (9 NYCRR) which provides: "Complaints filed prior to April 1, 1984 shall be determined in accordance with the RSL and Code provisions in effect on March 31, 1984, except that an overcharge collected on or after April 1, 1984 may be subject to treble damages pursuant to this section."

Thus, respondents requirement that leases dating back to 1974 be provided was rational and finds support in both the law and legislative history of the act.

Second, the interpretation by an administrative agency of the statutes it administers and of its own rules and regulations should be given deference if not unreasonable. *(Matter Salvati v Eimicke,* 72 NY2d 784 [1988], *reconsideration denied* 73 NY2d 995 [1989].)

Accordingly, the judgment of the Supreme Court, New York County (Kristin Booth Glen, J.), entered May 2, 1988, should be affirmed, without costs.

MURPHY, P. J., SULLIVAN, KASSAL and ELLERIN, JJ., concur.

Judgment, Supreme Court, New York County, entered on May 2, 1988, unanimously affirmed, without costs and without disbursements. Application granted only to the extent of supplementing record.