OPINION OF THE COURT
Charles A. LaTorella, Jr., J.
In this CPLR article 78 proceeding petitioner Zumo Management Inc. seeks a judgment vacating the decision and order of respondent State of New York Division of Housing and Community Renewal (hereinafter DHCR) dated March 5, 1999, which denied its petition for administrative review (PAR) and upheld the finding of a rent overcharge and the imposition of treble damages.
Petitioner Zumo Management Inc. is the owner of the premises known as 141-68 85th Road, Briarwood, New York. On August 10,1992, Beverly Watkins, the then-tenant of apartment 6D in the subject building, filed a complaint with the DHCR, alleging a decrease in essential services. The Rent Administrator, in an order dated February 12, 1993, found that the owner failed to maintain vermin control, and that there were gaps between the kitchen sink pipes, which constituted a failure to maintain services. The stabilized legal rent was reduced to $471.74, which was the level in effect prior to the most recent guideline increase commencing before October 1, 1992, the effective date of the order. The order of February 12, 1993 specifically stated that no rent increase may be collected after the effective date, October 1, 1992, until the DHCR issued an order restoring the rent.
Ms. Watkins vacated the subject apartment in December 1993. In January 1994, while the apartment was vacant, the owner made various improvements including the installation of new wood floors, new kitchen cabinets, new counter tops, including sink, faucet and connections, a new stove and refrigerator, new vinyl flooring in the kitchen, and a new bathroom sink, vanity, toilet and fixtures. These renovations totaled $8,360.
On March 1, 1994, Wilma Ruiz took occupancy of the subject apartment, pursuant to a two-year lease, at which time her rent was $700 a month. The owner applied for a rent restoration order, which the Rent Administrator denied on November 21, 1995, as an inspection conducted on November 13, 1995 revealed that the area around the pipes under the kitchen sink *109 had. gaps through which vermin could enter. The Rent Administrator, thus, determined that services pertaining to the kitchen sink gaps had not been restored. On February 6, 1996 the owner again applied for a rent restoration order, which was granted on May 7, 1997, with an effective date of April 1, 1996.
Ms. Ruiz filed a rent overcharge complaint with the DHCR on February 27, 1997, in which she asserted she paid vacancy and guideline increases when she took occupancy, despite the existence of the rent reduction order then in effect. The owner, in an answer dated May 13, 1997, asserted that as there was a rent reduction order in effect when Ms. Ruiz took occupancy, no guideline increase was taken. The owner’s calculations included an increase of $209 a month, which represented 1/40 of the cost of the improvements. The owner conceded that it unintentionally and erroneously charged the tenant a 2% guideline increase on March 1, 1996, and that this increase should not have been charged until April 1, 1996, when the rent was restored. The owner, therefore, stated that it would refund this sum to the tenant and give her a credit, including interest, totaling $15.26 on the June rent bill. The owner asserted that there were no other rent overcharges.
The DHCR mailed the owner a final notice of imposition of treble damages on overcharge on May 28, 1997, stating that an overcharge was caused by increasing the collectible rent while a service reduction order was in effect. The notice also stated that the original collectible rent was not sufficiently reduced pursuant to the reduction order, and that the collectible rent was to go back one guideline before the effective date of the reduction order. The owner, in a response dated June 17, 1997, asserted that the Rent Administrator had failed to take into account the improvements made to the apartment. The owner argued that pursuant to agency policy, it was permissible to collect a 1/40 improvement increase while a rent reduction order was in effect. It was further asserted that the rent reduction order only barred the collection of guideline increases. The owner also asserted that pursuant to its interpretation of the reduction order, it properly reduced the rent, one guideline back, so that the amount collected was $471.74 a month. The owner thus asserted that treble damages should not be imposed, as its interpretation of the rent reduction order was reasonable, and not done with any intent to overcharge the tenant. Finally, the owner asserted that under the DHCR’s own policy and case law, it was also entitled to collect a 5% *110 vacancy increase, even though a rent reduction order was in effect.
The Rent Administrator, in an order dated October 15, 1997, found a rent overcharge and assessed treble damages totaling $12,453.63. The Rent Administrator found that the rent reduction order of February 28, 1993 reduced the collectible rent to $471.74, and that the rent could not be restored until a restoration order was issued. The Rent Administrator found that the owner proved the cost of the improvements and was entitled to a rent increase of $209 a month. The Rent Administrator, however, determined that although the individual apartment improvement increase would be added to the legal regulated rent, the collectible rent remained frozen at $471.74 until the DHCR issued a rent restoration order. The Rent Administrator also found that the owner was not permitted to collect the vacancy or guideline increases while the rent reduction order remained in effect. The rent, thus, was restored to the full amount, including all legal increases, effective April 1, 1996, pursuant to the restoration order issued on May 7, 1997. Finally, it was determined that as Ms. Ruiz was paying $714 a month beginning December 1, 1996 and as this was less than the lawful stabilized rent, the owner waived the right to collect more than the amount actually charged.
The owner filed a petition for administrative review on November 12, 1997, in which it asserted that the Rent Administrator incorrectly determined that the individual apartment improvement rent increase was not collectible until a rent restoration order was issued. The owner cited two cases, Miller v New York State Div. of Hous. & Community Renewal (NYLJ, Mar. 26, 1997, at 30, col 4 [Sup Ct, Kings County]) and Matter of New York Props. Trust (DHCR, Aug. 31, 1994), in support of its claim that the improvement rent increase should be collectible despite the existence of the rent reduction order. In addition, the owner asserted that treble damages should not have been imposed, since it was justified in believing that agency policy permitted the collection of the improvement increase.
The Deputy Commissioner of the DHCR, in a decision and order dated March 5, 1999, denied the PAR, and upheld the finding of a rent overcharge and the imposition of treble damages. The Deputy Commissioner found that the improvements made to the subject apartment were made after the issuance of the rent reduction order on February 28, 1993. Therefore, the legal regulated rent was reduced to the level in effect prior to *111 the most recent guideline increase which commenced before the effective date of October 1, 1992. No rent increase could be collected after October 1, 1992, until the DHCR issued an order restoring the rent. The Deputy Commissioner found that in the cases cited by the owner, the individual apartment improvements had been made prior to the issuance date of the rent reduction orders. Therefore, in those cases, the 1/40 rent increases associated with the improvements could be collected after the rent reduction orders were issued.
Petitioner Zumo Management Inc. now seeks a judgment vacating respondent’s order of March 5, 1999 on the grounds that it is arbitrary and capricious and lacks a basis in the law and the record. Petitioner maintains that the disallowance of the vacancy increase and the individual apartment improvement increase was contrary to law and agency policy. Petitioner asserts that respondent has failed to follow its own policy or explain its departure from said policy and relies upon the two cases previously cited in the PAR.
Respondent DHCR, in opposition, asserts that its decision and order is neither arbitrary nor capricious, is based on substantial evidence in the record, and has a reasonable basis. It is asserted that the provisions of the Rent Stabilization Law of 1969 (Administrative Code of City of NY, tit 26, ch 4) prohibit an owner from collecting any rent increase once a rent reduction order has been issued. It is further asserted that agency policy prohibits an owner from collecting an increase for an individual apartment improvement, where such improvements have been made after the issuance of a rent reduction order.
The counsel for the tenant Wilma Ruiz has submitted an affirmation in opposition to the petition, asserting that the petition must be dismissed on the ground of failure to join a necessary party. Ms. Ruiz, however, has not sought to intervene in this proceeding. Ms. Ruiz, therefore, lacks standing to seek the dismissal of this proceeding.
It is well settled that the court’s power to review an administrative action is limited to whether the determination was warranted in the record, has a reasonable basis in law and is neither arbitrary nor capricious. (Matter of Colton v Berman, 21 NY2d 322.) In the case at bar, the court finds that the DHCR’s decision and order of March 5, 1999, which upheld the finding of a rent overcharge and the imposition of treble damages, has a reasonable basis in law, is supported by the record, and is neither arbitrary nor capricious.
*112 It is well within the DHCR’s scope of authority to determine the lawful rent for rent-stabilized housing accommodations, to decide whether there has been an overcharge, to direct a refund of overcharges and excess security deposits, and to impose an award of interest or treble damages. (Administrative Code § 26-516; Rent Stabilization Code [9 NYCRR] § 2526.1 [a] [1].)
An owner who fails to maintain essential services is not entitled to benefit from guideline increases, and is “barred from applying for or collecting any further rent increases.” (Administrative Code § 26-514 [emphasis added].) The DHCR’s Operational Bulletin 95-1 (Aug. 21, 1994), which sets forth the agency’s general policy, also provides that:
“B. * * * regardless of its effective date, a rent reduction order will not affect the continued collection of an 01 [Owner Individual Apartment Improvement Rent Increases] increase, if collection of the increase began prior to the issuance of the order, whether or not DHCR approval was required for the collection of the increase.
“C. No other rent increases may be collected after the effective date of the rent reduction order, until a rent restoration order is issued.” (Emphasis added.)
An administrative agency’s interpretation of the statutes and regulations it administers, if reasonable, must be upheld. (Matter of 47-40 41st Realty Corp. v New York State Div. of Hous. & Community Renewal, 225 AD2d 547.) The agency’s policy, which prohibits an owner from collecting an improvement increase, where said improvement was made after the issuance of a rent reduction order, has a rational basis and is consistent with the provisions of section 26-514 of the Administrative Code. Both the agency’s policy and the Administrative Code provide that once a rent reduction has been issued, no further rent increases may be collected until a rent restoration order is issued. These provisions are clearly intended to provide an owner with a financial incentive to promptly restore essential services. The court notes that while the rent reduction order was issued on February 12, 1993, petitioner failed to properly restore all essential services until April 1, 1996. The evidence in the record establishes that the owner herein, contrary to the provisions of the Rent Stabilization Law and agency policy, collected a vacancy increase and an individual apartment improvement rent increase after the issuance of the February 12, 1993 rent reduction order and prior to the rent restoration order. Furthermore, unlike the cases cited by petitioner, the improvements to the subject apartment were *113 made after the issuance of the rent reduction order. Petitioner, thus, was barred from collecting any rent increases where the rent reduction order remained in effect under the provisions of the Rent Stabilization Law and agency policy. The court, therefore, finds that the Deputy Commissioner’s determination that there had been an overcharge was amply supported by the administrative record and the law.
The court further finds that petitioner failed to establish “by a preponderance of the evidence that the overcharge was not willful.” (Administrative Code § 26-516 [a].) Willfulness has been defined as “ ‘intentionally doing an act and knowing that the act is being done.’ ” (Matter of Levanant v State Div. of Hous. & Community Renewal, 148 AD2d 185, 190, quoting Matter of Old Republic Life Ins. Co. v Thacher, 12 NY2d 48, 55.) Thus, the statute presumes that an overcharge is willful and places the burden of establishing that it was not willful on the landlord. (Matter of 430 Realty Corp. v New York State Div. of Hous. & Community Renewal, 196 AD2d 725; Matter of Gattiboni v Aponte, 188 AD2d 434; Matter of 985 Fifth Ave. v State Div. of Hous. & Community Renewal, 171 AD2d 572.) The provisions of section 26-514 of the Administrative Code clearly bar an owner from collecting any further rent increase once a rent reduction order has been issued. Petitioner’s failure to comply with the law, and its reliance on its own interpretation of the DHCR’s policy does not establish a lack of willfulness. The court, therefore, finds that the imposition of treble damages was warranted on the record and the law.
In view of the foregoing, petitioner’s request to vacate the decision and order of March 5, 1999 is denied, and the petition is dismissed.