In the Matter of ANN McKENZIE, Appellant, v MANUEL MIRA-
BAL, as Deputy Commissioner of the New York State
Division of Housing and Community Renewal, Respon-
dent.

First Department, April 10, 1990

APPEARANCES OF COUNSEL

*Anne Jaffe* for appellant.

*Mary Ellen Cronly* of counsel *(Dennis B. Hasher,* attorney), for respondent.

**OPINION OF THE COURT**

CARRO, J.

■ In this case of first impression, we must decide whether access to the fair market rent appeal process, which is ordi-

narily available only to the first tenant to occupy an apartment which becomes subject to the Rent Stabilization Law (Administrative Code of City of New York, tit 26, ch 4), may be had by a subsequent tenant. Upon our review of the statutory scheme that is at issue in this case, and its application to the facts herein, we hold that the petitioner, Ann McKenzie, the second tenant, is entitled to file a fair market rent appeal and to have a determination duly and expeditiously rendered by respondent New York State Division of Housing and Community Renewal (DHCR).

In October 1979, one Bruce Granovetter moved into a penthouse apartment at 455 West 23rd Street, known as London Terrace. Granovetter was the first rent-stabilized tenant after the apartment became "vacancy decontrolled", that is removed from the jurisdiction of the City Rent and Rehabilitation Law (Rent Control), and placed under that of the Rent Stabilization Law (RSL). Granovetter's lease provided for a first year rent of $1,700 per month with an increase to $1,800 per month the second year; the previous tenant had apparently paid approximately $300 per month under rent control.

In the normal course of business, the first rent-stabilized tenant to lease an apartment following a vacancy occasioned by the departure of a rent-controlled tenant must be notified by the landlord by an "Initial Regulated Rent Notice" of this change in status. It is conceded, by the landlord's attorneys, that Granovetter received no such notice. Neither did Granovetter receive notice from the landlord of his right to make a "fair market rent appeal", even though this, too, is required by law. It is undisputed that Granovetter learned of his right to make a fair market appeal by some means other than those mandated by law. Regardless, and with remarkable speed, only one week after he moved into the subject apartment, Granovetter filed a "Fair Market Rent Adjustment" application.

The Conciliation and Appeals Board (CAB), respondent's predecessor rent agency,[1] did not render a determination while Granovetter lived at London Terrace, whose tenancy lasted approximately one year. During this time, while the fair market rent appeal was pending, the landlord commenced an action in Civil Court, seeking unpaid rent from Granovetter.

---

1. On April 1, 1984, respondent DHCR assumed responsibility for regulating rental housing. (L 1983, ch 403.)

Petitioner, Ann McKenzie and her then husband, Malcolm Mellon, moved into the subject apartment on November 1, 1980 pursuant to a lease, also dated November 1, 1980. Because the CAB had not processed Granovetter's fair market appeal, the rent charged, $2,115 per month, was based upon Granovetter's under the RSL.

In August 1981, Granovetter and the landlord negotiated a settlement. In effect, Granovetter executed a general release whereby he discontinued his fair market rent appeal; in return, the landlord terminated the Civil Court action and, in addition, paid Granovetter some $4,000 cash. Thus, Granovetter's fair market rent appeal never culminated in a determination by the CAB.

In April 1982, petitioner and Mellon filed a complaint of rent overcharge with the CAB. Annexed to their complaint was a copy of the Granovetter complaint, along with a request that the fair market rent appeal be processed. Petitioner's rent was ultimately decreased by the District Rent Administrator for reasons unrelated to the fair market rent appeal.

Petitioner duly filed a petition for administrative review of this order. The issues were whether the amount of the unrelated overcharge was correctly calculated and whether petitioner was entitled to file a fair market rent appeal. Although petitioner's rent was once again recalculated, respondent Manuel Mirabal, in his capacity as Deputy Commissioner of the DHCR, ruled that under section 26-513 of the Rent Stabilization Law, "[I]t is clear that in cases where vacancy decontrol occurred after June 30, 1974, only the first rent stabilized tenant has the option of filing for an adjustment of the initial legal regulated rent (a fair market rent adjustment) if such tenant was properly notified of this right. If the first rent stabilized tenant fails to exercise this option or withdraws a fair market rent adjustment application before it has been decided on the merits, subsequent tenants are not given the right to file a fair market application. Rather the initial rent paid by the first stabilized tenant becomes the initial legal regulated rent and such rent cannot be challenged by subsequent tenants. In the instant case the evidence of record clearly shows the prior tenant withdrew his fair market rent adjustment application before any determination on the merits and therefore the current tenant cannot challenge the initial legal regulated rent paid by the prior tenant nor file a fair market rent adjustment application of her own."

After the DHCR determined that petitioner had no right to file a fair market rent appeal, she commenced the CPLR article 78 proceeding which is the subject of this appeal, seeking to have reversed and annulled so much of the afore-mentioned order which denied her the right to file a fair market rent appeal. She contended that the denial of her petition for administrative review was arbitrary and capricious insofar as the DHCR refused to determine her lawful rent by first determining, "as a base rent", the fair market value rent at the time of the Granovetter appeal. She asserted that Granovetter's discontinued appeal should not be deemed to be the single permitted fair market appeal under the RSL because it was not processed to finality. Petitioner further claimed that because of the failure of the landlord to provide the required notice to the first tenant after the apartment was vacancy decontrolled, she had the right to file a fair market rent appeal.

The IAS court denied the petition. It held that the issue of whether Granovetter was served with notice was moot. The court reasoned that the purpose of the notice was to notify the tenant of his right to file an appeal, a right of which Granovetter was unquestionably aware, given that he had filed an appeal. The court also ruled that "[p]etitioner has not demonstrated that respondent's interpretation and application of the pertinent statutes and regulations was irrational". In this regard, the court adopted respondent's position, that "petitioner is in the same position as a tenant who occupies a stabilized apartment where the first stabilized tenant never filed a Fair Market Rent Appeal." The court held that in neither case would a subsequent tenant have the right to file an appeal.

We disagree with the IAS court in both respects.

In deciding this case, we must first consider the effect of the landlord's failure to serve—on either Granovetter or petitioner—the initial regulated rent notice and notice of the right to make a fair market rent appeal. It is petitioner's contention that because the statutory scheme by which only the first rent-stabilized tenant can challenge the rent is predicated upon the tenant receiving notice from the landlord of his or her opportunity to do so, if the landlord fails to send the proper notice to the first tenant, then the right to make a fair market rent appeal should continue to pass from tenant to tenant until there is a tenant who is duly notified. We are in full agreement with this.

The RSL establishes a 90-day time limit within which a tenant may file a fair market rent appeal. This time period begins to run "the day the tenant receives, by certified mail, an initial legal regulated rent notice." *(Matter of M. J. Raynes, Inc. v State Div. of Hous. & Community Renewal,* 136 Misc 2d 626, 629 [Sup Ct, NY County 1987].) Administrative Code of the City of New York § 26-513 (formerly § YY51-6.0.2) provides:

"b. 1. The tenant of a housing accommodation that was regulated pursuant to the city rent and rehabilitation law or this law prior to July first, nineteen hundred seventy-one and that became vacant on or after January first, nineteen hundred seventy-four may file with the commissioner *within ninety days after notice has been received* pursuant to subdivision d of this section, an application for adjustment of the initial legal regulated rent for such housing accommodation. Such tenant need only allege that such rent is in excess of the fair market rent and shall present such facts which, to the best of his or her information and belief, support such allegation. * * *

"d. Within thirty days after the local effective date of the emergency tenant protection act of nineteen seventy-four the owner of housing accommodations as to which an application for adjustment of the initial legal regulated rent may be made pursuant to subdivision b of this section *shall give notice in writing by certified mail to the tenant of each such housing accommodation on a form prescribed by the commissioner of the initial legal regulated rent for such housing accommodation and of such tenant's right to file an application for adjustment of the initial legal regulated rent of such housing accommodation."* (Emphasis added.)

The Rent Stabilization Code (9 NYCRR parts 2520-2530) further amplified this statute. Section 2522.3 of the Rent Stabilization Code (eff May 1, 1987) *(see also,* former §§ 25 and 26) entitled "Fair Market Rent Appeal" provides:

"(a) Except as provided in section 2521.1 (a) (2) of this Title [initial legal registered rents], *an appeal of the initial legal registered rent on the ground that it exceeds the fair market rent for the housing accommodation may be filed with the DHCR by the tenant* of a housing accommodation which was subject to the City Rent Law on December 31, 1973. If the housing accommodation was registered in accordance with Part 2528 of this Title [initial registration], *this right is*

*limited to the first tenant taking occupancy on or after April 1, 1984, except where such tenant had vacated the housing accommodation prior to the service by the owner of the Notice of Initial Legal Registered Rent* as required by section 2523.1 of this Title. *In such event, any subsequent tenant in occupancy shall also have a right to file a Fair Market Rent Appeal until the owner mails the required notice and 90 days shall have elapsed without the filing of an appeal by a tenant continuing in occupancy* during said 90-day period. Once a Fair Market Rent Appeal is filed, no subsequent tenant may file such appeal. Notwithstanding the above, where the first tenant taking occupancy after December 31, 1973, of a housing accommodation previously subject to the City Rent Law, *was served with the notice required by section 26 of the former Code of the Rent Stabilization Association of New York City, Inc., the time within which such tenant may file a Fair Market Rent Appeal is limited to 90 days after such notice was mailed to the tenant by the owner by certified mail.*

"(b) The tenant need only allege in such appeal:

"(1) that the initial legal registered rent is in excess of the fair market rent; and

"(2) such facts which, to the best of his or her information and belief, support such allegation.

"(c) *Such appeal shall be dismissed where:*

"(1) the housing accommodation was subject to the City Rent Law prior to July 1, 1971, and the initial legal registered rent does not exceed the maximum rent as calculated pursuant to the City Rent Law for the period commencing January 1, 1974 and ending December 31, 1975, whether or not the housing accommodation was subject to the City Rent Law on that date, plus the appropriate guidelines allowance permissible for renewal leases pursuant to Guidelines Board Order No. 6 issued June 28, 1974 and effective July 1, 1974, and Order No. 6C, issued February 7, 1975, and effective July 1, 1974, for any lease or other rental agreement commencing on or after January 1, 1974; or

"(2) *the appeal is filed more than 90 days after the certified mailing to the tenant of the initial apartment registration, together with the notice pursuant to section 2523.1 of this Title (notice of initial legal registered rent)."* (Emphasis added.)

The corresponding notice requirement, Rent Stabilization Code § 2523.1, requires the landlord to give notice in writing to the first rent-stabilized tenant of his right to file an applica-

tion for an adjustment of the initial legal registered rent within 90 days of the mailing of the notice; this corresponds to the mandate of both the former code and statute.

While the landlord admitted that it could not prove service of the initial legal regulated notice and notice of the right to a fair market rent appeal, it contended that no such notice was necessary because Granovetter availed himself of the process, in spite of the absence of the mandated notice. Respondent correctly recognized that there is an exception to the rule that only the first tenant to occupy an apartment after it becomes vacancy decontrolled may appeal where the owner fails to serve a section 26-513 (d) notice. However, respondent went on to extend this and to adopt the landlord's position that an additional hurdle must be met for the subsequent tenant to have the right to file a fair market rent appeal, i.e., that the first tenant must not have filed a fair market rent appeal regardless of the lack of notice. Respondent construed "the purpose of the requirement that the owner serve a notice of right to file a fair market rent appeal is to give the first tenant notice of such right and an opportunity to file an appeal. Where the tenant has filed an appeal, the purpose of the notice requirement has been accomplished."

We depart from respondent's interpretation and hold that the express provisions of the laws now under consideration and public policy require a per se rule in cases such as this that unless and until the mandatory notices are duly served, the tenant's time in which to file a fair market rent appeal does not start to run, regardless of how much time elapses. In so holding, we reaffirm our awareness of the fact that in 1969, when the New York City Council first enacted the RSL, it cited in its legislative findings " 'exactions of unjust, unreasonable and oppressive rents and rental agreements * * * profiteering, speculation and other disruptive practices' " as the conditions which made such legislation necessary. (*Minton v Domb*, 63 AD2d 36, 37 [1st Dept 1978].) Thus, Granovetter's filing does not vitiate the landlord's duty in any way; there is no support for respondent's assertion that the burden shifts from the delinquent landlord to the diligent tenant. We decline to make a farce of the relevant legislative enactments regarding notice by allowing, nay, *rewarding*, landlords for ignoring and circumventing these mandates.[2]

2. In addition, under Rent Stabilization Code § 2522.3, which provides that, where a tenant has vacated the premises prior to service of the

■ We also disagree with respondent's determination that, because Granovetter withdrew his fair market rent appeal, the rent charged by the landlord becomes, *ab initio,* the lawful initial regulated rent following decontrol and, therefore, the base rent upon which subsequent tenants must pay. While it is true that oftentimes the first rent-stabilized tenant after decontrol may, after notice is duly served, choose not to file a fair market rent appeal if the tenant feels the rent is fair or may withdraw his appeal, while he is still in his tenancy, and that subsequent tenants do not then have the right to file a fair market rent appeal, the facts in the instant case require a different outcome.

In this case, Granovetter as the first tenant purported to "waive" his rights—and those of his successor tenants—after he was out of possession for over a year and had no interest whatsoever in the legal rent of the apartment. We believe that the settlement, in which landlord discontinued its Civil Court action, for nonpayment against Granovetter *and* gave him a $4,000 bonus, smacks of a payoff. For us to uphold this purported waiver would be contrary to public policy as well as the law. If Granovetter's general release is held to be applicable to petitioner, as the subsequent tenant, we would essentially be winking at, and encouraging, unsavory tactics to be employed by landlords. The effect would be to allow landlords to put in an inauthentic tenant upon decontrol, at a rental rate of the landlord's choosing, have the "tenant" file a fair market rent appeal, discontinue it, and then base the next rent upon the "legal" rent of that first tenant. We refuse to allow such a deliberate attempt to avoid in some part the operation of a statutory scheme enacted to prevent rent gouging.

■ Moreover, such a holding would, we believe, be in contravention of the spirit and the purpose of the RSL. While we are mindful that the construction placed upon a statute and implementing regulations by the agency responsible for their administration is entitled to great weight, DCHR's interpretation is entitled to deference only if it is not unreasonable or irrational. *(Matter of Salvati v Eimicke,* 72 NY2d 784, 791 [1988]; *Matter of Parkchester Mgt. Corp. v New York City Conciliation & Appeals Bd.,* 81 AD2d 796 [1st Dept 1981].) However, our reading of the relevant provisions indicates that

notices, the subsequent tenant has the right to file a fair market rent appeal, petitioner is entitled, as of right, to so file.

the focus of the one time limitation is the *determination,* rather than the filing, of the fair market rent appeal. As correctly noted by petitioner, "the Statute and Code are silent as to what happens if the tenant withdraws his appeal, and all the provisions limiting an apartment to one appeal clearly contemplate that the one appeal is processed to completion." Thus, respondent's determination that Granovetter's withdrawal was final and binding upon subsequent tenants was an unauthorized and unfair extension of the enactments.

Indeed, the statute appears to rest upon the axiom that once a fair market rent appeal is filed, it will be determined. Administrative Code of the City of New York § 26-513 states:

"b. 1. The tenant of a housing accommodation * * * may file * * * an application for adjustment of the initial regulated rent for such housing accommodation. * * * In *rendering a determination* on an application filed pursuant to this subdivision b the commissioner shall be guided by such guidelines and by the rents generally prevailing in the same area for substantially similar housing accommodations. Where the commissioner *has determined* that the rent charged is in excess of the fair market rent he or she shall, in addition to any other penalties or remedies permitted by law, order a refund * * *

"c. Upon receipt of any application filed pursuant to this section * * * The commissioner shall issue a written opinion to both the tenant and the owner upon rendering his or her *determination.*" (Emphasis added.)

Thus, respondent's apparent interpretation, that the Legislature regarded solely the filing, rather than the processing of the fair market rent appeal, must be held to be unreasonable. In arriving at this conclusion, we bear in mind the general rule, recently reiterated by the New York Court of Appeals in *Braschi v Stahl Assocs. Co.* (74 NY2d 201, 208 [1989]) that "[s]tatutes are ordinarily interpreted so as to avoid objectionable consequences and to prevent hardship or injustice"; this is particularly so given the legislative intent, favoring the protection of tenants. We therefore conclude that the respondent's determination was arbitrary, capricious and constituted a lack of discretion and that the IAS court erred in upholding its decision. *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 231-232 [1974].)

Accordingly, the judgment, of the Supreme Court, New York County (Bruce McM. Wright, J.), entered October 5,

1988, which denied the article 78 petition seeking to reverse and annul so much of an order, dated December 31, 1986, of the Commissioner of the State Division of Housing and Community Renewal, which denied that portion of petitioner's overcharge complaint against landlord concerning the "fair market rent appeal", should be unanimously reversed, on the law, the facts, and as a matter of discretion, the petition reinstated, and the matter remanded to fix the "fair market rental" within a period of six months, without costs.

KUPFERMAN, J. P., ASCH, KASSAL and SMITH, JJ., concur.

Judgment, Supreme Court, New York County, entered on October 5, 1988, unanimously reversed, on the law, the facts, and as a matter of discretion, without costs and without disbursements, the petition reinstated and the matter remanded to fix the "fair market rental" within a period of six months.