■ In the Matter of PARCEL 242 REALTY, Respondent, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Appellant, and RICHARD STEIN, Intervenor-Appellant. [626 NYS2d 758] —Judgment (denominated order) of the Supreme Court, New York County (Charles Ramos, J.), entered on or about April 29, 1994, which annulled the respondent agency's

October 21, 1992 order and opinion denying the landlord's Petition for Administrative Review, unanimously reversed, on the law, and the petition dismissed, without costs.

In May 1987 tenant-intervenor Richard Stein commenced a rent overcharge proceeding against his landlord Parcel 242 Realty, owner of the premises at 242 East 72nd Street. Stein, the first tenant after vacancy decontrol of apartment 10C, a five-room unit, complained that he was paying a monthly rent of $2,547.23, while the 1987 registered legal monthly rent was $838.13. On May 30, 1990 the landlord was sent a "Final Notice" requesting information and documents. This notice contained, *inter alia,* a warning about what kinds of proof of service the New York State Division of Housing and Community Renewal required to establish the legal rent. The New York State Division of Housing and Community Renewal ("DHCR") converted the proceeding to a Fair Market Rent Appeal ("FMRA") and on January 30, 1991 sent an "answering package" for the FMRA to the landlord.

This "answering package" included specific requests to the landlord for certain information and documentation, as well as instructions on how the landlord could establish the fair market rent for the unit in question by submitting comparability data. On February 20, 1991 the landlord responded, without submitting comparability data. After DHCR made a preliminary calculation of the fair market rent, the landlord was afforded yet another opportunity to submit comparability data, which it did. By order and determination issued on April 21, 1991, DHCR's Office of Rent Administration concluded that the landlord had "failed to submit the required comparability data" and fixed the fair market monthly rent for Stein's apartment at $1,205.99. DHCR denied the landlord's request for reconsideration, which included new comparability data that still did not cure the deficiencies which had previously been identified by the DHCR.

The landlord then filed a Petition for Administrative Review ("PAR"), arguing, *inter alia,* that the comparability data which it had submitted was sufficient under the Rent Stabilization Code. DHCR denied the PAR, holding that the landlord's comparability data had been properly rejected on various grounds, including: the landlord failure's to submit proof of the rents for all of the C-line apartments; the fact that the H-line apartments are not comparable as they have only four, rather than five, rooms; the landlord's failure to submit proof of the rents for all of the H-line apartments; and the land-

lord's failure to comply with the proof of service requirements which are a prerequisite for using the rents of comparable apartments in buildings other than that in which the subject apartment is located. The landlord then sought judicial review pursuant to CPLR article 78.

In annulling the DHCR's Order denying the PAR, the IAS Court held, *inter alia,* that DHCR's interpretation of the relevant portions of the Rent Stabilization Code (RSC; 9 NYCRR parts 2520-2530) and the various procedural requirements DHCR has established for comparability data, discriminate against small landlords and do not comport with common sense. Furthermore, the IAS Court concluded that DHCR had overstepped is authority and "usurped a role intended for the legislature." Thus, the IAS Court concluded that the DHCR's determination was arbitrary and capricious and granted the landlord's petition to annul the agency's order.

Preliminarily, we note that the landlord's argument on appeal that the DHCR improperly converted tenant's rent overcharge proceeding into a FMRA was not made at the administrative level and is therefore not properly considered for the first time upon judicial review of the proceeding *(see, Matter of 319 E. 50th St. Assocs. v New York State Div. of Hous. & Community Renewal,* 198 AD2d 28). Turning to the merits, we begin with the observation that in determinations of this kind, it is within the discretion of the DHCR to decide whether to accept or reject proffered leases as truly comparable, and the court's role is generally limited to a review of whether the agency's exercise of this discretion has a rational basis *(see, e.g., Matter of Mansions v Higgins,* 189 AD2d 713, 714; *Matter of Wyndham Realty Co. v State Div. of Hous. & Community Renewal,* 170 AD2d 370).

Contrary to the view of the IAS Court, we conclude that the various procedural requirements which the landlord has challenged here do not render the DHCR's determination arbitrary and capricious. Rather, they are an appropriate method by which the DHCR can address its legitimate concern that data submitted to it to establish comparable rents is genuine. Here, DHCR's rejection of the two on-site H-line apartments as not being comparable to tenant's C-line apartment was an appropriate exercise of its discretion and DHCR was not required to accept the landlord's self-serving contention that no other C-line apartment is comparable *(see, Matter of Axelrod Mgt. v Conciliation & Appeals Bd.,* 95 AD2d 691 [distinction between three-room and four-room apartments upheld]). Nor was it arbitrary or capricious for DHCR to require

records of every apartment in the C-line and the IAS Court's assumption that the agency would consider rent controlled apartments, despite the representation by DHCR that it would not, is without support in the record. If, as apparently was the concern of the IAS Court, an owner is attempting to establish a fair market rent for a unit in a building with too few apartments with a like number of rooms to effect a convincing comparability study, the DHCR provides reasonable alternative methods for so doing. The record supports the agency's determination in this matter that the landlord failed to fully comply with the requirements of these alternative means.

As to those comparables which were rejected for improper proof of service of certain forms, we disagree with the IAS Court's reading of the DHCR's procedures as prohibiting the use of personal service. On the contrary, the notice sent to this landlord by DHCR specifically stated that the three acceptable forms of proof of service included the "Tenant's signature acknowledging receipt of the Apartment Registration (RR1 Form) and showing the date of receipt". DHCR's refusal to accept the landlord's proffered proof because it only contained the tenant's initials, rather than the tenant's full signature, had a rational basis as this minimizes the opportunity for forgery and fraud. Additionally, DHCR's interpretation of rules concerning certified mail service will be upheld if it has a rational basis (see, Matter of Alcoma Corp. v New York State Div. of Hous. & Community Renewal, 79 NY2d 834, 836) and here the agency's interpretation has such a basis.

Finally, the IAS Court erred to the extent that it concluded that DHCR did not have a rational basis for requiring proof of service of the RR-1 and DC-2 forms. The RSC provides that comparable rents for the FMRA process may consist of legal regulated rents where the FMRA process for those apartments has either lapsed or been resolved (RSC [9 NYCRR] § 2522.3 [e] [1]), or, "at the owner's option, market rents in effect for other comparable housing accommodations on the date of the initial lease for the housing accommodation involved as submitted by the owner" (RSC [9 NYCRR] § 2522.3 [e] [2]). The IAS Court construed this provision as requiring the landlord to submit proof of service of the forms only for apartments the landlord owns, reasoning that difficulties in obtaining them from others effectively renders such documentation unavailable. However, such an interpretation discourages the landlord from submitting comparables with the required documentation. If it were the landlord's option to submit data for apartments within its own building with documentation or to

submit data for off-site rent-regulated apartments without documentation, then no prudent landlord would voluntarily assume the burden of obtaining the documentation. Thus, the IAS Court's construction of the statutory provision would render it meaningless and should not be adopted (see, Matter of Report of Aug.-Sept., 1983 Grand Jury III, 103 AD2d 176, 183; see also, Rocovich v Consolidated Edison Co., 78 NY2d 509, 515). As we have said previously, the RSC should not be construed to facilitate a landlord's "ignoring and circumventing" legislative mandates (McKenzie v Mirabal, 155 AD2d 194, 201).

DHCR promulgated the regulations at issue here (RSC [9 NYCRR] § 2520.1) and its construction of the relevant statutes and regulations, as "the agency responsible for their administration, if not irrational or unreasonable, should be upheld" (Matter of Swing v New York City Loft Bd., 180 AD2d 529, 530). DHCR's construction of the statute draws a distinction between regulated and unregulated apartments, rather than the on-site and off-site distinction drawn by the IAS Court. Further, as the Code provision makes no distinction between apartments owned by the landlord and those owned by others, but does make a distinction between regulated rents and market rents, DHCR's construction better comports with the plain language of the regulation (see, e.g., Chinese Staff & Workers' Assn. v City of New York, 68 NY2d 359, 365; Rossinski Realty Co. v Farrell, 135 AD2d 465, 468-469). If a landlord wants to base its comparability study purely on apartments without the RR-1 and DC-2 documentation, then DHCR has a rational basis, consistent with the plain meaning of the regulation, for requiring that they be unregulated apartments.

In sum, the IAS Court's holding that the challenged DHCR criteria for comparables are arbitrary and capricious because they discriminate against the small multiple dwelling owner by making it difficult for such owner to submit comparables does not withstand scrutiny. However, even assuming the accuracy of the IAS Court's findings as to the impact of the agency's regulations on owners, it is not enough for the petitioner to show that the DHCR's procedures, established in accordance with its interpretation of the applicable law, are financially or organizationally burdensome as this does not render "arbitrary and capricious" the agency's enforcement of those procedures to the petitioner's detriment (see, Matter of Ross-Viking Mdse. Corp. v Tax Appeals Tribunal, 188 AD2d 698, 699). Simply put, DHCR is not required to do the landlord's work of assembling the necessary documentation (see,

*Ullman Estates v New York City Conciliation & Appeals Bd.,*
97 AD2d 296, 298, *affd* 62 NY2d 758) nor to streamline its
procedures in a manner which would be more to the liking of
owners.

The landlord in this matter made its choice as to which
apartments to submit as purported comparables. DHCR then
made a determination that each apartment was either not
comparable or not accompanied by the sort of documentation
that would ensure that true comparables were not being
hidden. The agency's determination has a rational basis, and
should have been confirmed and the petition dismissed. Con-
cur—Murphy, P. J., Sullivan, Ellerin, Williams and Mazza-
relli, JJ.