In the Matter of John Verbalis, Respondent, v New York State Division of Housing and Community Renewal, Appellant, and Seventh FGP, Inc., Intervenor-Appellant. [769 NYS2d 474]—

Judgment, Supreme Court, New York County (Edward Lehner, J.), entered October 5, 2001, which denied appellants' motion to dismiss respondent's CPLR article 78 petition and granted the petition annulling a determination of the New York State Division of Housing and Community Renewal (DHCR), unanimously reversed, on the law, without costs, the motion granted, the petition denied and the proceeding dismissed.

Petitioner became a tenant of an apartment on West 13th Street in Manhattan in August 1976. The rent he was initially charged by 345 Estates Co., his landlord at the time, was $185 per month. Eight years later, on March 30, 1984, petitioner filed with the Conciliation and Appeals Board (CAB)—the predecessor to the respondent DHCR—a fair market rent appeal (FMRA), challenging the initial rent set by 345 Estates and used as the basis for subsequent rent increases by his succeeding landlords. Petitioner also filed a rent overcharge complaint. Whether petitioner's rent challenges should have been treated by DHCR as an FMRA or an overcharge claim lies at the heart of this case, and this appeal culminates the tortured road petitioner, his successive landlords, and the DHCR have traveled the past 19 years in resolving that question. Specifically, this appeal brings up for review an order of the Supreme Court

which annulled a revised determination by DHCR that petitioner's complaints should be treated as an FMRA rather than an overcharge complaint, as it previously had done. Because DHCR's determination was rational and consistent with applicable law, we reverse the decision of the IAS court and dismiss the petition. A brief review of the relevant rent stabilization law is necessary to understand the twists and turns of the present case and gives context to our decision.

In 1974, following an experiment in residential apartment vacancy decontrol in New York City, the Legislature enacted the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4, as amended [ETPA]; McKinney's Uncons Laws of NY §§ 8621-8634), which transferred apartments that had been subject to rent control to the rent stabilization system as they became vacant (ETPA § 5; Uncons Laws § 8625). The Omnibus Housing Act (OHA), enacted in 1983 and made effective April 1, 1984, amended the ETPA to require owners to file rent-stabilization registration statements with DHCR as their previously rent-controlled apartments became vacant. The rent-stabilization registration statements, unlike the former "Landlord's Report of Statutory Decontrol," known as form R-42, are periodic statements that disclose the amount of the rent charged for the subject apartments. Under the Rent Stabilization Law of 1969 (RSL), initial rents for decontrolled apartments are set by the owners and registered with the DHCR (RSL [Administrative Code of City of NY] § 26-512 [b]). Subsequent lawful increases are then determined in accordance with guidelines established by the Rent Guidelines Board (Rent Stabilization Code [RSC] [9 NYCRR] § 2521.1 [a] [1]; § 2522.3 [e]). The initial stabilized rent is thus of crucial importance because it establishes the base on which all subsequent lawful stabilized rents are determined.

To protect against rent-gouging by landlords and to insure that stabilized rents do not exceed fair-market levels, the apartment's initial decontrolled rent is made subject to the tenant's right to challenge that rent in an FMRA (RSL § 26-512 [b]). The Rent Stabilization Code requires the landlord, upon entry of an apartment into the rent stabilization system, to serve the first stabilized tenant with a notice of initial regulated rent—referred to as a "DC-1" or "DC-2" notice—which advises the tenant of the initial stabilized rent registered with DHCR and of his or her right to challenge that rent by filing an FMRA (RSC §§ 2522.3, 2523.1). The rent-stabilized tenant has 90 days from the service of the DC-1 or DC-2 notice to challenge the initial rent through an FMRA (RSC § 2523.1). If the tenant who

has been properly served with a DC-1 or DC-2 notice fails to file an FMRA within the 90-day period, the rent stated in the initial rent stabilization registration statement is established as the initial, lawful stabilized rent upon which all subsequent increases are based. However, if a landlord fails to serve a DC-1 or DC-2 notice on the first rent-stabilized tenant, the right to challenge the initial stabilized rent passes to subsequent tenants until the initial, lawful (fair market) stabilized rent is ultimately established by DHCR (RSC § 2522.3; *Matter of McKenzie v Mirabal*, 155 AD2d 194 [1990]; *Matter of Weinreb Mgt. v State Div. of Hous. & Community Renewal*, 231 AD2d 474 [1996]). Such rents are determined by DHCR based upon a formula that includes consideration of the last controlled rent as well as evidence of rents charged for comparable units in the same building or neighborhood or, lacking such evidence, upon DHCR's calculations using guidelines adopted by the Rent Guidelines Board (RSC § 2522.6).

While FMRAs filed after the April 1, 1984 effective date of the OHA are subject to a four-year statute of limitations and a four-year rental history review (RSL § 26-516; RSC § 2522.3; CPLR 213-a), FMRAs filed before that date are not subject to such constraints and may reach back indefinitely to when the apartment first became decontrolled (*see e.g. Matter of Mengoni v New York State Div. of Hous. & Community Renewal*, 97 NY2d 630 [2001]). Once the initial legal stabilized rent is established, either through DHCR's consideration of an FMRA or by a failure of the rent-stabilized tenant who has been properly served with a DC-1 or DC-2 notice to file a timely challenge to the rent stated in the landlord's initial rent stabilization registration statement, a tenant's challenge to his or her rent is treated as an overcharge complaint.

An overcharge complaint challenges the rent charged by the landlord as being in excess of the legal regulated rent, i.e., the initial stabilized rent, plus authorized percentage increases (*see* RSC § 2520.6 [e]; § 2526.1 [a] [3] [i]; Scherer, Residential Landlord-Tenant Law in New York § 4:259 [West 2003]). If it is determined that the landlord has overcharged the tenant, the tenant is entitled to an award of treble damages and attorneys' fees unless the landlord is able to prove that the overcharge was not willful (RSC § 2526.1 [a] [1]). No such awards are available in an FMRA proceeding (RSC § 2526.1 [g]; *see also Mendelson v Empire Assoc. Realty Co. Assn.*, 278 AD2d 40, 41 [2000]).

Where the landlord is unable to provide proof that a DC-1 or DC-2 notice was properly served on the initial stabilized tenant or any subsequent tenants, DHCR's announced policy—

approved by this Court—has been to treat a tenant's rent claim as an FMRA rather than an overcharge complaint (*see e.g. Matter of Powers Assoc. v New York State Div. of Hous. & Community Renewal*, 229 AD2d 349 [1996], *lv denied* 89 NY2d 808 [1997]; *Matter of McKenzie v Mirabal*, 155 AD2d 194, 201 [1990]). Consistent with that policy, DHCR instructed petitioner's landlord in a June 6, 1989 notice that a tenant of a vacancy-decontrolled apartment was entitled to file an FMRA at any time if "the owner never served an Initial Regulated Rent Notice (DC-1 or DC-2) to the first tenant or appropriate subsequent tenant who moved into the apartment after decontrol," and that petitioner's rent challenges would be treated as an FMRA "[i]f you cannot provide Form DC-1 [or] DC-2 . . . and proof of service to the first or subsequent rent stabilized tenant." The notice went on to state that "[i]f the tenant is ineligible to file a Fair Market Rent Appeal as provided by law, DHCR will process the case as a rent overcharge complaint."

When petitioner moved into apartment number 2 in August 1976, the owner of the building was 345 Estates Co. Petitioner was the second rent-stabilized tenant of the apartment, the first such tenant being Ann Leong, who had apparently moved into the apartment in August 1974, after the prior rent-controlled tenant had vacated it, and moved out two years later, to be succeeded by petitioner. About midway through petitioner's initial two-year lease, the building was sold to Time Equities, Inc. Petitioner continued his tenancy pursuant to renewal leases with Time Equities, which remained his landlord until appellant Seventh FGP, Inc. took over that role on or about October 1, 1990.

On March 30, 1984, petitioner joined approximately 30,000 other New York City rent-stabilized tenants in filing rent challenges before the time limitations established by the OHA took effect on April 1, 1984 (*see generally Matter of Lavanant v State Div. of Hous. & Community Renewal*, 148 AD2d 185, 192 [1989]). Petitioner, like many other tenants, filed both an FMRA and an overcharge complaint.

The record demonstrates that Time Equities responded relatively promptly to DHCR's requests for rent history documents. Time Equities reported that it was unable to locate any documents showing that its predecessor had served a DC-1 or DC-2 notice on Ms. Leong. Nor was it able to supply a copy of Ms. Leong's lease or any record of what rent she was charged. However, Time Equities did provide documents, which, together, supplied more than sufficient information to enable DHCR to determine the initial legal stabilized rent for petitioner's apart-

ment. Those documents included, among other things, a New York City Office of Rent Control order reflecting the last rent-controlled maximum base rent for petitioner's apartment as well as for all the other apartments in the building, a CAB opinion setting the initial legal regulated rent for a comparable two-room apartment in petitioner's building, as well as the rent histories of all the apartments in the building beginning in 1976.

Although DHCR's criteria for treating petitioner's rent challenges as an FMRA were plainly met and although Time Equities had provided at least sufficient information for DHCR to determine a lawful initial stabilized rent for petitioner's apartment, the District Rent Administrator (DRA) issued a decision in January 1990, which dismissed petitioner's FMRA and sustained his overcharge complaint. Without any apparent basis for doing so, the DRA's decision established petitioner's initial $185 per month rent as the initial stabilized rent and, further, determined that Time Equities had collected $3,000.87 in rent overcharges, albeit not willfully. Time Equities immediately credited petitioner with the overcharge amount.

Dissatisfied with the DRA's decision, petitioner filed a petition for administrative review (PAR), in which he argued, among other things, that the decision improperly failed to establish the proper initial stabilized rent and absolved the landlord from having to prove that a DC-1 or DC-2 notice had been served on the initial stabilized tenant, the absence of which entitled him to pursue an FMRA. Petitioner also claimed that he was entitled to treble damages, which, as previously noted, are not available in FMRA challenges.

In an order dated November 14, 1997, the DHCR, continuing to treat petitioner's claims as an overcharge complaint, determined that the DRA had incorrectly calculated the initial stabilized rent and that petitioner should receive treble damages because the landlord had not provided a rental history for the apartment—apparently ignoring or overlooking the documents Time Equities had previously submitted to the agency. The November 1997 order established the initial stabilized rent for the apartment at $163.72. Pursuant to DHCR regulations then in effect, the order also froze the allowable rent at $163.72 for the 15-year period beginning with the start of petitioner's tenancy on August 1, 1976 through July 31, 1991. Using the recalculated rent and rent freeze, DHCR awarded petitioner $32,838.24 in treble overcharge damages. By this time, appellant, Seventh FGP, had succeeded as petitioner's landlord.

Seventh FGP brought an article 78 petition against the

DHCR, challenging the November 1997 order. Petitioner was not named as a party, but he did receive notice that the article 78 proceeding had been filed and did not attempt to intervene. Supreme Court upheld DHCR's decision, and Seventh FGP appealed to this Court. While that appeal was pending, DHCR concluded, upon review of the record, that petitioner's rent challenges should have been treated as an FMRA, rather than as an overcharge complaint, given the absence of evidence that the required DC-1 or DC-2 notice of initial regulated rent had ever been served on the initial rent-stabilized tenant or on petitioner. In addition, DHCR determined that the rent freeze it had imposed might be impermissible under this Court's decision in *Matter of Lukin v New York State Div. of Hous. & Community Renewal* (264 AD2d 341 [1999] [holding that such freezes are inequitable when imposed as a result of DHCR's delay in processing rent challenges]). DHCR sought and obtained Seventh FGP's assurance that it would not seek to collect from petitioner any rental arrears that might be found to exist if the case was reprocessed as an FMRA. DHCR and Seventh FGP thereafter entered into a stipulation vacating the November 1997 DHCR order, withdrawing the appeal then pending in this Court, and remanding the case to the DHCR for further processing, with a new final decision to be issued by DHCR by August 30, 2000. This Court thereafter permitted the appeal to be withdrawn "in accordance with the . . . stipulation."

In a May 18, 2000 decision on remand, the DHCR noted that, because there was no proof that the initial rent-stabilized tenant had ever been served with the required DC-1 or DC-2 notice, the initial legal stabilized rent had to be determined. Using the documents, which Time Equities had previously provided in response to petitioner's 1984 rent challenges, DHCR calculated the initial fair-market rent for petitioner's apartment to be $156.10 (lower than that set in the prior agency determinations). In addition, DHCR declined to impose any rent freeze, applied the percentage rent increases that had been allowed since the apartment became stabilized, and calculated the amount of refund due to petitioner to be $8,622.78, less the $3,000.87 previously credited to petitioner by Time Equities. Because petitioner's challenge was treated on remand to the DHCR as an FMRA, petitioner was not awarded treble damages.

Deprived of the benefit of the rent freeze and the treble damages award provided in DHCR's November 1997 order, petitioner filed the instant article 78 proceeding, challenging DHCR's May 2000 order. Reversing his prior insistence that his rent chal-

lenge must be treated as an FMRA, petitioner claimed in the instant petition that there is no basis for treating his rent claims as anything other than an overcharge complaint. In addition, petitioner claims that DHCR was foreclosed from reconsidering the matter once Supreme Court had upheld the November 1997 order; that DHCR was estopped by the passage of time from reversing its prior decision; that his due process rights were violated because DHCR did not provide prior notice of its decision to enter into a stipulation with Seventh FGP to vacate the November 1997 order and to reconsider its previous determinations, and because DHCR did not provide him with an additional opportunity to be heard in the remand proceedings.

Supreme Court granted the petition, holding that if the initial landlord had served the required DC-1 or DC-2 notice, then DHCR would be required to treat petitioner's rent challenges as an overcharge complaint, and that DHCR's decision on remand was arbitrary because it created the "anomaly of a detriment to the tenant and a benefit to the landlord because a prior owner failed to comply with the law." DHCR's and Seventh FGP's appeal of that judgment is what is presently before this Court.

Supreme Court exceeded its authority in determining that DHCR's decision on remand was inequitable. A court's power to review an agency decision is limited to determining whether the decision was rational (*Matter of Pell v Board of Educ.*, 34 NY2d 222, 230 [1974]). If the agency's decision is rational, "it must be upheld, even though the court, if viewing the case in the first instance, might have reached a different conclusion" (*Matter of West Vil. Assoc. v Division of Hous. & Community Renewal*, 277 AD2d 111, 112 [2000]). DHCR's May 2000 decision is clearly rational and in conformance with its own announced polices to treat a tenant's rent complaint as an FMRA where there is no proof that the initial stabilized tenant was served with a DC-1 or DC-2 notice. Indeed, DHCR's May 2000 order stands in refreshing contrast to the irrationality of its November 1997 order, which violated DHCR's own policies, determined that petitioner's landlords had willfully overcharged petitioner because they had failed to provide rental history documents when such documents sat—ignored—in DHCR's files, and froze petitioner's rent at 1976 levels for 15 years, while petitioner's challenges got mired in administrative delay.

Supreme Court's concern that the DHCR's May 2000 order creates an anomaly of detriment to the tenant and benefit to the landlord resulting from the initial landlord's failure to serve a DC-1 or DC-2 notice on petitioner or his predecessor as required by law is misplaced. As an initial matter, the order

does not create a detriment to petitioner. To the contrary, it establishes—finally—the initial, fair-market stabilized rent upon which all subsequent increases are to be based and awards petitioner a refund of all amounts collected in excess of those amounts—the very benefit that the law is intended to provide. In addition, the law is not intended to generate "benefits" of inequitable windfalls for tenants in the form of unauthorized treble damages or onerous rent freezes during protracted periods of administrative processing. The DHCR's reversal of a determination that awarded such unauthorized or inequitable remedies in this case does not create a detriment to petitioner, nor a benefit to the landlord; it simply achieves what the law intends.

Petitioner's contention that DHCR was required to treat his rent challenge as an overcharge complaint rather than as an FMRA, because the landlord neglected to provide records establishing the rent charged to petitioner's predecessor, fails on the facts, since the record demonstrates that Time Equities provided all the documentation DHCR needed to calculate the initial fair-market rent. There is nothing in the law that requires DHCR to proceed along the path that petitioner would have preferred or that makes its determination in this case arbitrary or capricious.

Petitioner's assertions that DHCR was precluded from reexamining its November 1997 order because it had been upheld by a decision of Supreme Court ignores the effect of this Court's order approving the stipulation between DHCR and Seventh FGP. While it is true that a judgment implementing an administrative agency's order may not be collaterally attacked by the agency's subsequent modification of that order (*see e.g. Matter of Laub v New York State Div. of Hous. & Community Renewal*, 176 AD2d 560 [1991]; *Barnert v 41 Fifth Ave. Assoc.*, 158 AD2d 289 [1990]), the IAS court's judgment in this case upholding DHCR's November 1997 determination was the subject of an appeal to this Court, not of a collateral attack by DHCR. That appeal was disposed of by this Court's order approving and effectuating the stipulation between DHCR and Seventh FGP, which, by its terms, vacated DHCR's November 1997 determination—and by necessity, the Supreme Court's affirmance of that determination—and remanded the matter to DHCR for further proceedings. This Court plainly has authority to vacate an agency decision—even one that has been upheld by Supreme Court—and to remand the matter to the agency for further consideration. So, too, does this Court have the authority to approve a stipulation between the parties to an appeal

which has the same effect. While approval of such a stipulation does not constitute a judicial decision on the merits of the original agency decision (*see e.g. Matter of 251 W. 92nd Corp. v New York State Div. of Hous. & Community Renewal*, 227 AD2d 333 [1996]), it does operate to vacate that decision. Such judicial authority is not circumscribed by RSC § 2529.9, which limits DHCR's authority to modify or revoke an agency order to the to the period "prior to the date that a proceeding for judicial review has been commenced in the Supreme Court." Petitioner's related contention that the IAS court's previous affirmance of DHCR's November 1997 decision acts as res judicata to preclude DHCR from reexamining that order is equally without merit (*see e.g. Di Donato v Rosenberg*, 256 NY 412, 418 [1931]; *see also A. Colish, Inc. v Abramson*, 178 AD2d 252 [1991]).

Petitioner's additional assertion that his rights were somehow violated because he was not joined as a party in the article 78 proceeding brought by Seventh FGP is also unavailing. He was given notice of the proceeding and could have, but chose not to, intervene pursuant to CPLR 1012 or 1013. Furthermore, as previously noted, the order of this Court approving the stipulation between DHCR and Seventh FGP did not constitute a decision on the merits as to how petitioner's rent challenges should be treated, and thus did not implicate petitioner's due process rights.

Accordingly, Supreme Court's judgment granting petitioner's article 78 petition and annulling DHCR's May 2000 order is reversed and the petition is denied. Concur—Buckley, P.J., Rosenberger, Lerner, Friedman and Gonzalez, JJ.