[703 NYS2d 80]

In the Matter of GLENN MULLER et al., Respondents, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL et al., Appellants.

First Department, February 8, 2000

### APPEARANCES OF COUNSEL

*Joseph H. Lessem* of counsel (*Jonathan S. Gaynin* and *Meichelle R. MacGregor* on the brief; *Cowan, Liebowitz & Latman, P. C.,* attorneys), for respondents.

*Sheldon D. Melnitsky* of counsel (*Ursula M. Richards* on the brief; *Marcia P. Hirsch,* attorney), for New York State Division of Housing and Community Renewal, appellant.

*Daniel S. LoPresti* and *Stuart F. Shaw* of counsel (*Robert H. Gordon* on the brief; *Shaw & Binder,* attorneys), for 327 Central Park, L. L. C., additional appellant.

### OPINION OF THE COURT

SULLIVAN, J. P.,

At issue in this CPLR article 78 proceeding is a tenants' challenge to the initial monthly stabilized rent, established 10 years earlier with respect to a luxury six-room apartment overlooking Central Park, in Manhattan. In September 1990, the tenants, petitioners herein, took possession of apartment 9A, located at 327 Central Park West, under a vacancy two-year lease at an agreed monthly rent of $3,353.74. Admittedly, petitioners' annual income exceeds the monetary threshold for deregulation under the Rent Regulation Reform Act of 1993 ([RRRA 1993] L 1993, ch 253). They argue, however, that, because the basis for the "initial registered rent" for the apartment was grossly inflated pursuant to an earlier illegal and fraudulent nonprimary residence lease, the legal rent should be less than the $2,000 monthly threshold for deregulation. Faced with the untimeliness of their challenge, petitioners, for the first time and contrary to their arguments before the Division of Housing and Community Renewal (DHCR), argued on article 78 review that they are the first rent-stabilized tenants.

On September 30, 1994, petitioners filed a tenant objection and complaint of overcharge challenging the apartment's initial April 1, 1984 registered rent of $2,383.70 and questioning their 1990 rent. As DHCR's records show, by order of June 24, 1980, the Office of Rent Control decontrolled the apartment on the ground that the tenant did not occupy the premises as her primary residence. At the time, the maximum collectible rent was $484. The tenant vacated the apartment in August 1980.

Thereafter, on or about October 1, 1980, the predecessor to the current landlord, respondent 327 Central Park, L. L. C., leased the apartment to Edwin Einbender for a two-year term at a "free market" rent of $2,167 monthly, which was never challenged. In 1984, the predecessor landlord served and filed the Initial Apartment Registration with DHCR, using the then rent of $2,383.70 as the initial registered rent, and continued to register annually thereafter. Einbender and, after his death in 1987, his wife executed successive rent-stabilized renewal leases which, by 1989, had raised the monthly rent to $2,771.69. Einbender's wife continued to reside in the apartment until 1989.

On September 18, 1990, the predecessor landlord leased the apartment to petitioners for a two-year term, commencing September 24, 1990, at a monthly rental of $3,353.74, which, based on Einbender's last rent, conformed with the 9% increase

for a two-year lease and 12% vacancy allowance provided by Rent Guidelines Board Order (RGBO) No. 21. Petitioners executed successive rent-stabilized renewal leases with rent increases in accordance with the particular RGBO then in effect.

On September 30, 1994, petitioners filed both a Complaint of Overcharge and Fair Market Rental Appeal (FMRA) challenging, in each instance, the initial registered rent as illegal and the product of a "sweetheart deal" between the landlord and the first stabilized tenant, Einbender. Recognizing the untimeliness of their appeal, petitioners alleged that there was "no proper initial registration of the initial stabilized lease in the early 1980s establishing fair market value" and "no proper registration of 90 day right of appeal of initial stabilized lease." Petitioners concluded that because of this improper registration, they were entitled to the rights of "the first proper stabilized tenant to the decontrolled fair market [rent]."

To rebut this claim and prove service of the 1984 Initial Apartment Registration, respondent landlord offered the affidavit of the Director of Finance of the Rent Stabilization Association (RSA), accompanied by a complete copy of its mailing list for the building, including Einbender, and a United States Postal Service certification of bulk mailing postmarked July 2, 1984, certifying the date and number of pieces of mail. Petitioners offered nothing to demonstrate that the Initial Apartment Registration had not been served in 1984, attempting, instead, to discredit the RSA affidavit, the list of apartments and even the receipt for bulk mailing certified by the Postal Service. DHCR rejected petitioners' challenge to RSA's proof of service.

Respondent landlord also provided DHCR with a complete rent history from April 1, 1990. Petitioners do not dispute that the required registrations were filed from 1984 to 1994 or DHCR's calculation demonstrating that there has been no overcharge from the base date. The landlord also submitted the June 1980 decontrol order, as well as the 1984 Initial Apartment Registration and argued that an FMRA did not lie because apartment 9A had never been vacancy decontrolled. The landlord also denied ever charging tenants more than the legal registered rent based on the Initial Apartment Registration.

To support their theory that the 1984 Initial Apartment Registration had been improper, petitioners submitted an affidavit from Polly McCall, a tenant, who stated that when she rented her apartment in 1980, the predecessor landlord forced

her to sign "a second residence lease", which, she learned in "speaking with other tenants," was required of all tenants. In a successful challenge to the rent brought by her and other tenants, the Conciliation and Appeals Board (CAB) reduced her rent and ordered that the tenants be reimbursed for overcharges in the sum of almost $30,000.

McCall also stated that after conversations with Einbender she understood that he had also signed a second residence lease and that "he was paying a rent that did not follow the applicable guidelines and was substantially higher than that of the previous tenant." Based on that information, petitioners argued that because Pennsylvania was Einbender's primary residence and other tenants held similar second residence leases the FMRA should be granted or, at a minimum, a hearing held. Respondent landlord argued that the petitioners' allegations of fraud were unsubstantiated. Despite petitioners' repeated requests, the landlord refused to produce Einbender's original lease, citing Rent Stabilization Law (Administrative Code of City of NY) § 26-516 (g), which limits the obligation of the owner of a registered housing accommodation to maintain or produce "any records relating to rentals * * * [to] four years prior to the most recent registration."

By May 7, 1997 order, the Rent Administrator denied petitioners' complaint, finding that, as the second rent-stabilized tenants, they had no right to challenge the initial rent, which had been properly registered and that the Initial Apartment Registration had been duly served upon the first rent-stabilized tenant, Einbender. Moreover, the Rent Administrator held that the first rent-stabilized tenant was not entitled to file an FMRA because the prior rent-control tenant did not occupy the apartment as her principal residence and, thus, the apartment had been decontrolled for reasons other than vacancy.

Petitioners promptly filed a Petition for Administrative Review (PAR) challenging, *inter alia*, the Rent Administrator's finding that the Einbenders had been properly served with the initial registration, as well as his determination that an FMRA will not lie in the absence of vacancy decontrol. Interestingly, petitioners eschewed the argument that they were the apartment's first rent stabilized tenants. DHCR denied the PAR, finding that petitioners, as the second rent-stabilized tenants, lacked standing to challenge the initial rent, which had been properly registered with DHCR in 1984, and could not, in any event, maintain an FMRA complaint because apartment 9A

was decontrolled for a reason other than vacancy. Finally, the Commissioner rejected petitioners' claim of fraud for insufficiency of evidence.

Petitioners sought reconsideration on the basis of an earlier CAB opinion, referred to by McCall in her affidavit, which, they claim, proved the predecessor landlord's fraudulent attempt to evade the Rent Stabilization Law. Again, they reiterated their position that Einbender was the first rent-stabilized tenant. DHCR denied reconsideration on the ground that petitioners had not, as required by Rent Stabilization Code (9 NYCRR) § 2529.9, demonstrated that the Commissioner's order was the result of fraud.

Petitioners thereafter commenced this article 78 proceeding against DHCR. By stipulation, respondent landlord was permitted to intervene. In an amended petition, petitioners, for the first time, made explicit the argument that, by virtue of the predecessor landlord's fraudulent use of second residence leases, as demonstrated by a CAB determination, they, and not Einbender, were the first rent-stabilized tenants of apartment 9A.

The IAS Court annulled the DHCR determination and remanded the matter for a hearing as to the Einbenders' primary residence and petitioners' allegations of fraud, as well as a determination as to the timeliness of their FMRA. The court found that petitioners had, at the PAR level, raised the claim that they were the first rent-stabilized tenants and drew a negative inference as to the content of the 14-year-old 1980 Einbender lease based on respondent landlord's refusal to submit the lease. On the issue of fraud, the court, contrary to DHCR's evaluation of the evidence, also found the McCall affidavit to be "trustworthy and probative." Finally, the court, ignoring this Court's precedents, found, as irrational, DHCR's interpretation of Rent Stabilization Law § 26-513 that, in the absence of vacancy decontrol, an FMRA does not lie. We find all of these premises to be faulty and, accordingly, reverse.

In the challenged administrative order, DHCR noted that while, prior to the Einbenders' tenancy, the subject apartment had been subject to rent control, it had not been decontrolled as a result of vacancy by a rent-control tenant and, thus, following its long-standing interpretation of the Rent Stabilization Law, found that the initial rent for the apartment was not subject to an FMRA. That interpretation has found judicial favor. (*Matter of Hoy v State of N. Y. Div. of Hous. & Community Renewal*, 233 AD2d 120.) The initial rent is defined by

Rent Stabilization Law § 26-512 (b) (2) as "the rent agreed to by the landlord and the tenant and reserved in a lease or provided for in a rental agreement."

Rent Stabilization Law § 26-513 (b) (1), in pertinent part, provides: "The tenant of a housing accommodation that was regulated pursuant to the city rent and rehabilitation law or this law prior to July first, nineteen hundred seventy-one and that became vacant on or after January first, nineteen hundred seventy-four may file with the commissioner within ninety days after notice has been received pursuant to subdivision d of this section, an application for adjustment of the initial legal regulated rent for such housing accommodation."

In *Matter of Hoy v State of N. Y. Div. of Hous. & Community Renewal* (233 AD2d 120, *supra*), this Court confirmed DHCR's denial of an FMRA because the apartment, decontrolled pursuant to a stipulation between the owner and the rent-control tenant who remained in possession after decontrol, was not vacancy decontrolled. The first rent-stabilized tenant was thereafter barred from commencing an FMRA and the rent agreed to by that tenant, the first rent-stabilized tenant, and the landlord became, as a matter of law, the legal regulated rent. In *Matter of Fichera v New York State Div. of Hous. & Community Renewal* (233 AD2d 107), we upheld a DHCR determination that the rent for an apartment decontrolled by owner occupancy prior to the first rent-stabilized tenant's taking occupancy was not subject to an FMRA challenge because "the current tenant is not the first decontrolled tenant to take occupancy." (*Supra,* at 108.)

█ Here, decontrol occurred because the former rent control tenant did not occupy the apartment as her primary residence. She vacated the premises only after DHCR issued its order of decontrol; until then, she remained as a decontrolled tenant. As in *Hoy* and *Fichera*, the subject apartment did not become decontrolled by virtue of the vacancy of a rent-control tenant; it became decontrolled prior to vacancy. Occupancy by a person not subject to rent control before the first rent-stabilized tenant takes possession forecloses an FMRA. Neither petitioners nor the IAS Court cited any legal authority for the proposition than an FMRA will lie where the premises were not vacancy decontrolled pursuant to New York City Rent and Eviction Regulations (9 NYCRR) § 2200.2 (f) (17) (vacancy) but, rather, pursuant to section 2200.2 (f) (1)-(16) or (18) (decontrol on grounds other than vacancy). Thus, as this Court has recognized, DHCR could properly determine that, absent vacancy

decontrol, not even a first rent-stabilized tenant is entitled to an FMRA. Since neither the Einbenders nor petitioners are entitled to an FMRA, the rent charged and collected from the Einbenders became the legal regulated rent. The increases over that base rent, which cannot be unchallenged, have been in accordance with the Rent Stabilization Law and Code. In such circumstances, DHCR properly dismissed petitioners' FMRA.

■ Moreover, and in any event, petitioners' belated 1994 attempt to challenge the initial 1984 rent is untimely. In June 1997, the Legislature enacted the Rent Regulation Reform Act of 1997 ([RRRA 1997] L 1997, ch 116), effective immediately and specifically applicable to all pending proceedings (*see*, L 1997, ch 116, § 46; *see, Zafra v Pilkes*, 245 AD2d 218), which, *inter alia*, amended Rent Stabilization Law § 26-516 (a) (ii) to add: "Where the amount of rent set forth in the annual rent registration statement filed four years prior to the most recent registration statement is not challenged within four years of its filing, neither such rent nor service of any registration shall be subject to challenge at any time thereafter." (L 1997, ch 116, § 33; *see also*, L 1997, ch 116, § 34 [amending CPLR 213-a].) The point is reinforced by the New York State Assembly's Memorandum in Support of RRRA 1997, which states that the legislation is intended, *inter alia*, to "codify a four-year statute of limitations for contesting rent overcharges." (1997 McKinney's Session Laws of NY, at 2108.) Thus, with the passage of four years after a registration is filed, the service of "any" earlier registration is beyond challenge. Moreover, the landlord's filing of registrations from 1990 through 1994 bars petitioners from challenging the monthly rent of $2,771.69 set forth in the 1990 registration.

Petitioners argue that the four-year limitation in the Rent Stabilization Law applies only to rent overcharges (Rent Stabilization Law § 26-516), not to FMRAs (*id.*, § 26-513). Only the former contains a four-year limitations period. Under Rent Stabilization Law § 26-513, FMRAs, which are essentially overcharge complaints challenging the first stabilized rent for a decontrolled apartment as exceeding the lawful stabilized increases over the last controlled rent, have their own limitation period of 90 days after proper service of the initial registered rent on the first rent-stabilized tenant. Moreover, aside from being provided for in separate statutory sections within the Rent Stabilization Law, overcharge complaints and FMRAs are treated by DHCR as separate and distinct proceed-

ings. The courts have recognized such differences. (*See*, *Smitten v 56 MacDougal St. Co.*, 167 AD2d 205.)

Rent Stabilization Law § 26-513 was not amended by RRRA 1997 except in one insignificant respect. Subdivision (b), which contains the initial regulated rent notice requirement triggering the time limitation, has not been amended. Nor has a different time limitation been provided for a refund of excess rent from 1974 or the commencement of the tenancy. Petitioners argue that these provisions are clearly inconsistent with the amendments of Rent Stabilization Law § 26-516.

Apparently, there is a dearth of reported decisions directly on point as to the applicability of RRRA 1997 to FMRAs. In *Matter of Schutt v New York State Div. of Hous. & Community Renewal* (NYLJ, July 28, 1999, at 23, col 1 [Sup Ct, NY County]), the court rejected the tenant's argument that the failure to amend Rent Stabilization Law § 26-513 indicates a legislative intent to limit the four-year limitation period to overcharge complaints. (*See*, *Brinckerhoff v New York State Div. of Hous. & Community Renewal*, NYLJ, Nov. 24, 1999, at 30, col 4 [Sup Ct, NY County].) *Schutt* noted that the 90-day time limitation to challenge the initial rent and file an FMRA in section 26-516 (a) (ii) would have a different meaning from the nearly identical language contained in section 26-513 (e). In *Matter of Kempner v New York State Div. of Hous. & Community Renewal* (NYLJ, Oct. 27, 1999, at 28, col 2 [Sup Ct, NY County], the court held that since the Legislature did not significantly amend section 26-513, its time limitations continue with respect to FMRAs.

Although not discussed by *Schutt*, an FMRA is filed on a DCHR form entitled "Tenant's Objection to Initial Rent," FMRA being listed as one of the types of objections to the initial rent set forth on the form. Rent Stabilization Law § 26-516 (g), which, tellingly, omits any language limiting its application to overcharge complaints, provides that an owner who complies with the registration requirements need not maintain or be compelled to produce rent records more than four years prior to the most recent registration. Moreover, sections 26-513 (e) and 26-516 (a) contain similar language limiting both the time to challenge the initial rent and the time to file an FMRA by the service of the initial registration. Thus, RRRA 1997, the purpose of which was to place a limit on the time that the rent could be challenged and to set a time limit for landlords to retain rental records, by its express terms, bars petitioners' FMRA challenge to the initial rent.

Indeed, it is hard to ascribe to the Legislature an intent to limit a landlord's obligation to maintain records to one purpose and not another. Were it otherwise, despite the clear language of Rent Stabilization Law § 26-516 (g), landlords, having no way of knowing in advance when and whether the rent for any apartment might be challenged in an FMRA, would effectively be required to maintain records indefinitely, thereby rendering constant the hardship that the Legislature intended to correct. In construing a statute, courts should not lose sight of the problem that the amendment was intended to remedy. (McKinney's Cons Laws of NY, Book 1, Statutes § 95.) Thus, section 26-516 (g) should be equally applied to all rent challenges, including FMRAs.

To the extent petitioners rely on *Matter of Janoff & Olshan v Division of Hous. & Community Renewal* (203 AD2d 291 [2d Dept 1994]), it should be noted that the matter was decided before the enactment of RRRA 1997 and involved a pre-1984 complaint not controlled by the Omnibus Housing Act of 1983 (*see, Matter of Century Tower Assocs. v State of N. Y. Div. of Hous. & Community Renewal,* 83 NY2d 819 [four-year Statute of Limitations not applicable to proceedings filed prior to April 1, 1984]).

■ Even assuming, arguendo, that the service of the Initial Apartment Registration in 1984 could be challenged in this 1994 complaint, DHCR's finding, which is supported by the record, that the Einbenders were served with it must be sustained. (*Matter of Stork Rest. v Boland,* 282 NY 256, 267.) Rent Stabilization Law § 26-513 (e), insofar as is pertinent, provides that "an application for an adjustment pursuant to this section must be filed within ninety days from the initial registration." In August 1992, DHCR promulgated Policy Statement 92-3 to provide a standard for acceptable proof of service on a tenant of the Initial Apartment Registration: "A Post Office receipt certifying the date and the number of pieces of mail to the building included in the 'Carrier Route Pre-Sort' service along with a list of the mailing addresses furnished by the RSA or by a bonded mailing house". The landlord's proof met this burden. The affidavit of RSA's Director of Finance attested to the service of the initial registration on Edwin Einbender on July 2, 1984. RSA's list of mailing addresses with a bulk mailing receipt from the United States Postal Service, certifying the date and number of pieces mailed, was attached to the affidavit. Thus, the 1984 service and filing of the initial registration, as DHCR found, barred petitioners' FMRA.

In its remand to the agency, the IAS Court directed DHCR to determine whether the subject apartment had been the Einbenders' primary residence, presumably from the time they took occupancy in 1980 until Mrs. Einbender's departure in 1989. Since, however, the filing of initial and annual registrations from 1984 through 1994 cut off petitioners' right to challenge the rent from 1980 through 1990, as a matter of law, the Einbenders' tenancy during the 1980's cannot be relevant to petitioners' current claim. Rent Stabilization Law § 26-516 (g) provides that "[a]ny owner who has duly registered a housing accommodation pursuant to section 26-517 of this chapter shall not be required to maintain or produce any records relating to rentals of such accommodation for more than four years prior to the most recent registration or annual statement for such accommodation." Thus, the landlord cannot be required to provide information relating to the Einbenders' tenancy in the 1980's.

The IAS Court was of the view that if the subject apartment was not the Einbenders' primary residence, then petitioners were the first rent-stabilized tenants. As a matter of law, however, the Einbenders were the first rent-stabilized tenants because, pursuant to Rent Stabilization Law § 26-504 (a) (1) (f) and Rent Stabilization Code § 2520.11 (k), an apartment is exempt from rent stabilization where it is not occupied as the tenants' primary residence "as determined by a court of competent jurisdiction." Thus, unless and until such a court determines that the apartment is not the tenants' primary residence, the tenancy remains subject to rent stabilization. (*See, Golub v Frank*, 65 NY2d 900; *Kips Bay Towers Assocs. v Yuceoglu*, 134 AD2d 164, *lv denied* 71 NY2d 806.) Under Rent Stabilization Law § 26-504 (a) (1) (f), DHCR, to which the issue was remanded, is barred from determining primary residence status.

Moreover, given the Einbenders' failure timely to challenge the initial registration, the statement therein that the Einbenders were rent-stabilized tenants became fixed. The initial registration advised the Einbenders of their right to file a challenge within 90 days if any information therein was incorrect. As a matter of law, the stabilized rent provided in the initial registration may not now be challenged. (*See,* Rent Stabilization Law § 26-513 [e]; § 26-516 [a] [ii].)

In any event, DHCR's determination that the Einbenders were the apartment's first rent-stabilized tenants is both supported by the record and rationally based. Petitioners' own

admissions compelled the result reached. In their September 30, 1994 complaint they admitted, with regard to the Einbenders' lease, that the rent guidelines were "in 1980 not followed when rented to first stabilized tenant. Allegedly used as second residence when in fact was primary residence of former tenant." In their PAR, petitioners admitted that they were "the successor to the initial Rent Stabilized tenant" and argued, *inter alia*, that the landlord failed in "its burden to substantiate that the initial tenant Mr. Einbender was served with the 1984 Initial Registration Statement." In their request for reconsideration, petitioners admitted that "Edwin Einbender * * * was the first rent stabilized tenant." Rather than argue that they were the first rent-stabilized tenants, they claimed that service of the initial registration on the Einbenders was defective, by virtue of which they stepped into the Einbenders' shoes.

DHCR's own rent records—the 1980 order of decontrol, the initial and subsequent registrations on file of the Einbenders' rents as rent stabilized from April 1, 1984 through Mrs. Einbender's vacatur in or about 1989, as well as each of the Einbenders' rent stabilized renewal leases—clearly belie petitioners' claim and demonstrate that the Einbenders were rent-stabilized tenants, who were treated as such. That the landlord would, contrary to its pecuniary interest, accede to coverage under rent stabilization for nine years, when it could have, allegedly, benefitted by the exempt status had the Einbenders not been primary residents, is illogical. The only fair inference to be drawn is that the Einbenders were rent-stabilized tenants.

Moreover, in challenging the Einbenders' rental status, petitioners rely on arguments which, because they were not raised before DHCR, are not cognizable on article 78 review. (*Matter of Yonkers Gardens Co. v State of N. Y. Div. of Hous. & Community Renewal,* 51 NY2d 966.) The District Rent Administrator found that petitioners were "the second stabilized tenant[s]." In their PAR, petitioners did not challenge their status as second rent-stabilized tenants, arguing, instead, that pursuant to *Matter of McKenzie v Mirabal* (155 AD2d 194) they were entitled to file an FMRA because of the landlord's failure to prove service of the initial registration on the Einbenders, the first stabilized tenants. The argument that they, and not the Einbenders, were the first stabilized tenants was raised for the first time in this article 78 proceeding, no doubt because of the intervening passage of RRRA 1997, which

specifically barred challenges to a rent registration after more than four years. (*See*, Rent Stabilization Law § 26-516 [a] [ii].) Since this argument, advanced for the first time in the article 78 proceeding, raises issues of fact, it should not be considered.

In support of their challenge to the initial registered rent, petitioners also argue that the Einbenders' 1980 lease was fraudulent. DHCR rejected this claim. The burden, of course, of proving fraud is on the person alleging it (*Harte & Co. v Shayani*, 33 Misc 2d 680, *affd* 20 AD2d 968, *lv denied* 14 NY2d 490) and the alleged fraudulent acts must be shown by clear and convincing evidence. (*Supra.*) The only proof offered here was the hearsay statement of another tenant, McCall, regarding her conversation with Mr. Einbender as to what she understood him to say as to the terms of his lease. Even under the relaxed evidentiary standard applicable to administrative agencies, such a statement would not establish fraud. (*See*, *e.g.*, *Matter of Drayton v Hasl*, 121 AD2d 631.) Moreover, the evidence as to the Einbenders' primary residence is such that it is just as likely that they used Pennsylvania, which petitioners allege was the primary residence, as a residence for tax purposes. Nor should the court have drawn an adverse inference against the landlord for failure to produce the 1984 lease with the Einbenders. Since the lease went into effect more than four years before, the landlord had no obligation to produce it. (*See*, *Matter of Giffuni Bros. v New York State Div. of Hous. & Community Renewal*, 211 AD2d 545.)

Once an agency has made a factual determination based on the evidence before it, a court may not substitute its judgment for that determination. (*Matter of Oriental Blvd. Co. v New York City Conciliation & Appeals Bd.*, 92 AD2d 470, *affd* 60 NY2d 633.) Moreover, a tenant cannot circumvent the four-year Statute of Limitations applicable to rent overcharge claims by couching the claim as one for fraud. (*Newgarden v Theoharidou*, 247 AD2d 367.) The allegations of fraud here are only incidental to the claim for rent overcharge.

Finally, we note, no claim is made that the agreed-upon rent in the 1984 lease exceeded the free market rental value, i.e., an amount agreed to, without evading the Rent Stabilization Law, by the landlord and tenant in an arm's length transaction. (*See*, Rent Stabilization Law § 26-512 [b].)

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered July 10, 1998, insofar as it annulled respondent DHCR's determination and remanded the matter for an eviden-

tiary hearing on petitioners' entitlement to an FMRA, should be reversed, on the law, without costs or disbursements, and the petition dismissed. Appeals from orders, same court and Justice, entered March 17, 1999 and March 18, 1999, respectively, should be dismissed, without costs, as academic.

RUBIN, ANDRIAS and FRIEDMAN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered July 10, 1998, insofar as it annulled respondent DHCR's determination and remanded the matter for an evidentiary hearing on petitioners' entitlement to a Fair Market Rental Appeal, reversed, on the law, without costs or disbursements, and the petition dismissed. Appeals from orders, same court, entered March 17, 1999 and March 18, 1999, dismissed, without costs, as academic.