[802 NYS2d 190]

In the Matter of ADOR REALTY, LLC, Respondent, v DIVISION OF HOUSING AND COMMUNITY RENEWAL, Appellant.

Second Department, October 3, 2005

**APPEARANCES OF COUNSEL**

*Marcia P. Hirsch*, New York City (*Jennifer E. Oxford* of counsel), for appellant.

*Kucker & Bruh, LLP*, New York City (*Patrick K. Munson* and *Katherine Helwig* of counsel), for respondent.

**OPINION OF THE COURT**

SPOLZINO, J.

The principal issue presented on this appeal is how the Division of Housing and Community Renewal (hereinafter the DHCR) can rationally adjudicate an owner's request for a longevity increase, to which the owner is entitled after eight years without a vacancy increase, without running afoul of the statutory provisions that prohibit the DHCR from considering its records beyond four years or requiring the owner to maintain records for longer than that period. Because the only alternative to disregarding these limitations in determining an owner's entitlement to a longevity increase would be to grant the owner's application without any proof of the factual predicate for that increase, i.e., that eight years had passed without a vacancy increase, and it would not be rational to conclude that the Legislature intended such a result, we hold that the Supreme Court erred in rejecting the DHCR's determination to ignore the four-year rule in this context. For the reasons that follow, however, we affirm, in part, the Supreme Court's rejection of the DHCR's denial of the owner's major capital improvement claim. Finally, we conclude that the imposition of treble damages here was not irrational, and, therefore, we modify the judgment to sustain the DHCR's determination in that regard.

## Background

These issues arise in the context of a rent overcharge complaint brought by the tenant in February 2001, within two years of the date on which she took occupancy of the premises in 1999. In its response to the complaint, the owner attempted to justify the rent that was being charged on the basis of the rent provided for in a 1978 lease, plus longevity and major capital improvement increases. The owner's claim of entitlement to a longevity increase was based on the 21 years that had passed since the 1978 lease, allegedly without. a vacancy increase. With respect to its claim that the rent properly included a major capital improvement increase, the owner submitted evidence of various improvements to the premises, in the form of invoices and checks, in the amount of $3,300.

In reply to the owner's claim of entitlement to a longevity increase, the tenant submitted the 1990 rent registration statement for the premises reflecting a change in tenancy in 1989, arguing that the rent increase at that time could reasonably be attributed only to a vacancy. On this basis, the tenant recognized

that the owner was entitled to a nine-year longevity increase, but opposed the claimed increase for the additional 12 years since the 1978 lease. The tenant also opposed the owner's claim of entitlement to a major capital improvement increase on the basis of photographs purporting to demonstrate major discrepancies between the owner's claims and the condition of the premises.

The DHCR sustained the tenant's rent overcharge complaint in part. It rejected the owner's claim to a longevity increase beyond the nine years on the basis of the 1990 rent registration statement submitted by the tenant. The DHCR addressed the conflicting evidence with respect to the owner's capital improvements claim by conducting its own inspection. Based upon a visit to the premises in December 2001, the DHCR's inspector reported that there was no evidence of the following: "new plywood was installed in the kitchen," "new walls with sheetrock" in the kitchen, new cement with "new ceramic wall tiles," "new walls with sheetrock . . . in bedroom," and a new door frame in the living room. The DHCR then rejected that portion of the claim. The DHCR also determined that installing a new sheetrock bathroom ceiling, painting the apartment, and changing the outlet switches did not constitute major capital improvements, but instead constituted repair or maintenance, for which a capital improvement increase is not available. Having thus found a substantial rent overcharge, the DHCR awarded treble damages to the tenant.

The owner challenged the DHCR's determination in this proceeding pursuant to CPLR article 78. The Supreme Court granted the petition, set aside the DHCR's determination, and remitted the matter to the DHCR for further proceedings, finding that by considering the 1990 rent registration statement, the DHCR had violated the statutory prohibition against consideration of its records that were more than four years old, that the DHCR's reliance on the inspector's report was arbitrary and capricious, and that, based upon those determinations, the imposition of treble damages was unreasonable. The DHCR appeals.

## Longevity Increase

The Rent Regulation Reform Act of 1997 (L 1997, ch 116 [hereinafter RRRA 1997]) entitles the owner of a regulated housing accommodation, upon the vacancy of the unit, to a 20% rent increase, plus, whenever there has not been a vacancy

increase with respect to the unit for eight years or more, an additional increase, known as a "longevity" increase, equal to .6% of what was the legal regulated rent for each year since the previous vacancy increase (*see* L 1997, ch 116, § 19, codified at Rent Stabilization Code [9 NYCRR] § 2522.8 [a] [2] [ii]). An owner's entitlement to a longevity increase thus depends upon a factual determination that there has been no vacancy increase with respect to the housing accommodation in question during the previous eight years. Rent Stabilization Law (Administrative Code of City of NY) § 26-516 (a) (2) and CPLR 213-a, however, prohibit the DHCR and the courts, respectively, from examining "the rental history of the housing accommodation prior to the four-year period preceding the filing" of a rent overcharge complaint or commencement of a proceeding. In addition, Rent Stabilization Law § 26-516 (g) provides that an owner who has registered a housing accommodation "shall not be required to maintain or produce any records relating to rentals of such accommodation for more than four years prior to the most recent registration or annual statement for such accommodation."

The DHCR's approach to these apparently irreconcilable commands was to ignore the statutory limitations as being inconsistent with its duty to adjudicate the owner's claim to a longevity increase fairly in accordance with the statute. The DHCR then considered its records and, on the basis of those records, refused to recognize the longevity increase to the extent claimed by the owner. Since the DHCR thus sustained the tenant's rent overcharge complaint, the role of the Supreme Court is limited to determining whether that decision has a rational basis or was arbitrary and capricious (*see Matter of Faymor Dev. Co. v Popolizio*, 89 AD2d 857, 857 [1982]; *Matter of Plaza Mgt. Co. v City Rent Agency*, 48 AD2d 129, 131 [1975], *affd* 37 NY2d 837 [1975]). While, ordinarily, the DHCR's interpretation of the statutes it administers would be entitled to deference and, thus, would be upheld unless unreasonable or irrational (*see Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal*, 75 NY2d 206, 213 [1989]; *Matter of Salvati v Eimicke*, 72 NY2d 784, 791 [1988]), this case presents a pure issue of statutory interpretation, the resolution of which does not require the special expertise of the agency and, therefore, as to which no such deference is necessary (*see Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359, 371 [1999]; *Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal, supra* at 214).

The courts that have considered the restrictions imposed by RRRA 1997 with respect to the DHCR's review of its records have consistently interpreted them strictly, based upon what has been recognized to be their purpose—"impos[ing] a stringent four-year Statute of Limitations for rent overcharge complaints" (*Matter of Orin Mgt. Corp. v New York State Div. of Hous. & Community Renewal*, 275 AD2d 126, 132 [2000]). As a result, tenants have regularly been precluded from seeking relief for overcharges that occurred more than four years before the assertion of the claim (*see Matter of Anderson v Lynch*, 292 AD2d 603 [2002]; *Myers v Frankel*, 292 AD2d 575 [2002]; *Cecilia v Irizarry*, 292 AD2d 557 [2002]; *Newgarden v Theoharidou*, 247 AD2d 367 [1998]). Beyond this, however, the courts have recognized these provisions to have drawn a bright line prohibiting reconsideration of rent determinations with respect to prior periods even where such consideration may affect the current rent calculation (*see Matter of Tockwotten Assoc. v New York State Div. of Hous. & Community Renewal*, 7 AD3d 453, 454 [2004]; *Thornton v Baron*, 4 AD3d 258 [2004]; *Matter of Highlawn Assoc. v Division of Hous. & Community Renewal*, 309 AD2d 750 [2003]; *Matter of Hatanaka v Lynch*, 304 AD2d 325, 325-326 [2003]; *Matter of McCarthy v New York State Div. of Hous. & Community Renewal*, 290 AD2d 313, 313-314 [2002]; *Matter of Payne v New York State Div. of Hous. & Community Renewal*, 287 AD2d 415 [2001]; *Matter of Orin Mgt. Corp. v New York State Div. of Hous. & Community Renewal, supra*; *Matter of Muller v New York State Div. of Hous. & Community Renewal*, 263 AD2d 296 [2000]; *Matter of Pechock v New York State Div. of Hous. & Community Renewal*, 253 AD2d 655 [1998]; *Zafra v Pilkes*, 245 AD2d 218, 219 [1997]).

These decisions, though many, have not addressed the impact of the record-review restrictions on longevity increase determinations, which presents a somewhat different issue. Unlike the issues that have been litigated, the question presented in the context of the owner's claim of entitlement to a longevity increase is not whether a rent established more than four years ago was proper. Rather, the issue is whether, in making a current rent determination, the DHCR is limited by these provisions to considering only facts that have occurred within the past four years, even though the determination that the DHCR must make requires proof that there has been no vacancy increase for the past eight years.

Despite this distinction, it cannot be denied that the determination the DHCR made here involved an "examination of the

rental history of the housing accommodation prior to the four-year period immediately preceding the commencement of the action." (CPLR 213-a.) The DHCR expressly relied on the 1990 rent registration statement for the premises in determining the tenant's 1999 rent overcharge complaint. This is the conduct expressly proscribed by Rent Stabilization Law § 26-516 (a) (2). The Supreme Court's consideration of such records is similarly inconsistent with CPLR 213-a.

It would be tempting to avoid the effect of this statutory conundrum by rejecting the DHCR's determination on the ground that by failing to submit evidence in support of the claim that there has been no vacancy increase in the past 21 years, the owner did not prove the legality of the claimed rent, as it is required to do (see *Matter of Beacon Hill Apts. v New York State Div. of Hous. & Community Renewal*, 278 AD2d 319 [2000]; *Matter of Flagg Ct. Realty Co. v Holland*, 265 AD2d 327 [1999]; *Matter of Derfner Mgt. Co. v New York State Div. of Hous. & Community Renewal*, 252 AD2d 555 [1998]). To resolve the matter in that way would, however, run afoul of the prohibition imposed by Rent Stabilization Law § 26-516 (g) on requiring the owner to maintain rent records for more than four years. Placing the burden of proof, and, consequently, the risk of non-persuasion, on the owner would effectively violate this provision by compelling the owner to maintain the records in order to sustain its claim to a longevity increase.

The dilemma thus presented by these statutory provisions, simply stated, is that entitlement to the longevity increase the owner claims turns on evidence that, under a strict reading of the statutory language, the DHCR may neither consider nor require the owner to maintain. Inherent in the Legislature's determination to allow a longevity increase, however, is its purpose that claims of entitlement to such an increase be adjudicated in a manner that is fair to both the owner and the tenant. The rules of statutory construction, moreover, require that, where it is possible to do so, the various parts of the statutory scheme be harmonized, reading and construing them together (see *Matter of Pilgrim Psychiatric Ctr. [Christian F.]*, 197 AD2d 204 [1994]; McKinney's Cons Laws of NY, Book 1, Statutes § 97), and reconciling the apparently conflicting provisions in the manner most consistent with the overall legislative intent (see *Levine v Bornstein*, 4 NY2d 241, 245 [1958]; *People ex rel. Mason v McClave*, 99 NY 83, 89 [1885]; McKinney's Cons Laws of NY, Book 1, Statutes § 98). The only way to accomplish that here is to re-

fuse to apply the statutory proscriptions to determinations regarding longevity increases.

Nothing in the legislative history suggests that either the statutory limitation on the DHCR's consideration of its records or the statutory prohibition against requiring the owner to maintain records was intended to apply to the DHCR's determinations with respect to longevity increases. To the contrary, the provisions were addressed to different issues within the overall rent regulation scheme. While, ordinarily, we would nevertheless apply the restrictions as written, their application here is not neutral with respect to the purposes of the longevity increase, but destructive of those very purposes, operating as an impediment to their fair administration. As a result, the way to resolve this dilemma that is least inconsistent with the legislative intent is to read the four-year rule as not applying to longevity increase determinations.

Indeed, the provisions of RRRA 1997 with respect to record retention and consideration were specifically intended to address the continuing problem of challenges to rent determinations made more than four years before and the concomitant burden on owners to maintain records for many years to respond to those claims. The four-year record retention limitation originally came into existence as part of the Omnibus Housing Act of 1983 (L 1983, ch 403). Until that time, section 42 (A) of the Code of the Rent Stabilization Association of New York City, Inc., required that the owner maintain all leases back to May 31, 1968 (*see Matter of Lavanant v State Div. of Hous. & Community Renewal*, 148 AD2d 185, 190-191 [1989]). The Omnibus Housing Act attempted to overcome this problem by introducing the requirement that rents be registered (L 1983, ch 403, § 5) and by imposing the four-year statute of limitations and record-keeping restriction at issue here (L 1983, ch 403, §§ 14, 35).

Despite their apparent clarity, these provisions were the subject of substantial litigation, resulting in a dispute between the judicial departments with respect to their applicability to claims that had been filed before the effective date of the statute, April 1, 1984, but remained in litigation thereafter (*compare Matter of J.R.D. Mgt. Corp. v Eimicke*, 148 AD2d 610, 611 [1989], *with Matter of Lavanant, supra*, 148 AD2d at 192). The dispute was ultimately resolved by the Court of Appeals (*see Matter of Century Tower Assoc. v State of N.Y. Div. of Hous. & Community Renewal*, 83 NY2d 819 [1994]). In addition, treble

damages for willful overcharges were imposed on owners who failed to provide complete rent records for more than the four-year period before the overcharge claim (*see Matter of Gattiboni v Aponte,* 188 AD2d 434 [1992]).

As is apparent from the specific changes in statutory language that the Legislature effected (*see* L 1997, ch 116, §§ 33, 34), the Legislature's purpose in adopting the amendments to the Omnibus Housing Act in RRRA 1997 was to clarify what the Legislature evidently thought it had stated clearly in 1983. Both the legislative memoranda in support of the bill and Governor Pataki's memorandum upon signing it support the conclusion that the legislation was intended to strengthen the limitation on the review available in rent overcharge proceedings strictly to the four-year period immediately preceding the filing of the complaint (*see Matter of Orin Mgt. Corp. v New York State Div. of Hous. & Community Renewal,* 275 AD2d 126, 133 [2000], *revd on other grounds* 97 NY2d 630 [2001]). As the Governor noted in approving the law, "[a] number of regulatory reforms are included . . . to simplify the administration of rent laws while protecting the rights of tenants and owners" (*see* Governor's Mem approving L 1997, ch 116, 1997 McKinney's Session Laws of NY, at 1923). The purpose of these provisions was thus "to alleviate the burden on owners to retain . . . paperwork indefinitely" and to "simplif[y] the process" (*Matter of Gilman v New York State Div. of Hous. & Community Renewal,* 99 NY2d 144, 149 [2002]).

Abundantly clear from this legislative history is the fact that none of the concerns that prompted the four-year restrictions had anything to do with the longevity increase that was newly-created by RRRA 1997 and served entirely different legislative purposes. In fact, there is nothing in the legislative history from which it can be inferred that the review and record-keeping limitations were intended to apply to longevity increases or were related to them in any way.

The longevity increase was one of the significant changes made by RRRA 1997 to the rules applicable to vacancy increases. Under the provisions of the Rent Stabilization Code applicable prior thereto, upon the vacancy of a housing accommodation, the owner was entitled to an increase in a percentage established each year by the local rent guidelines board. In abolishing this regimen in favor of a substantial fixed percentage vacancy increase (*see* Shulman, Outside Counsel, *Rent Regulation Reform Act of 1997,* NYLJ, July 16, 1997, at 1, col 1), however,

RRRA 1997 made vacancy increases more lucrative, thereby risking aggravation of the potential that tenants would be harassed by owners seeking to obtain vacancy increases, a problem which the Legislature addressed elsewhere in the legislation (*see* L 1997, ch 116, § 28). The adoption of the longevity increase provision ameliorated this problem in part by allowing the owner some compensation related to the length of the tenant's occupancy where a vacancy increase had not been available for some time.

Other than their inclusion in the same chapter of the session laws, the longevity provisions are not related to the record review and retention provisions in any way. The purposes for which the longevity increase was enacted had nothing to do with record retention and there was no history of administrative burden in connection with such determinations that the Legislature sought to redress. It cannot be said, therefore, that there was any legislative intent to limit the DHCR's consideration of longevity increases by these provisions in the same manner as was clearly intended to be applied with respect to other aspects of rent overcharge complaints. Moreover, for the reasons that are made apparent by this litigation, it would be inconsistent with the purposes of the longevity increase provision to do so.

Similarly, there is nothing in the legislative history of the record-retention limitations to indicate that the Legislature considered the effect of those provisions on longevity increase determinations. Although the statute does not appear to have been intended to shift away from the owner the burden of establishing the validity of the rent charged, the strict application of the rule in this context, paired with a similarly strict reading of the statutory restrictions on the DHCR's review of its own records, would lead to the conclusion, as advocated by the owner here, that an owner is always entitled to a longevity increase in the absence of proof to the contrary. If rent regulations are to be fairly administered with some view toward achieving the legislative purpose, however, the applicable legislation cannot have been so intended. Legislation cannot be read so as to reach an absurd result (*see Zappone v Home Ins. Co.*, 55 NY2d 131, 137 [1982]; *Flynn v Prudential Ins. Co. of Am.*, 207 NY 315, 318 [1913]; *Matter of Folsom*, 56 NY 60, 66 [1874]).

In analyzing in this way the dilemma presented by these provisions, we recognize that ignoring the four-year prohibition in determining entitlement to a longevity increase effectively

requires the owner to maintain records beyond the four-year period. As the Appellate Division, First Department, aptly noted in the related context of addressing a tenant's challenge to the DHCR's determination of a fair market rent appeal (hereinafter FMRA),

> "it is hard to ascribe to the Legislature an intent to limit a landlord's obligation to maintain records to one purpose and not another. Were it otherwise, despite the clear language of Rent Stabilization Law § 26-516 (g), landlords, having no way of knowing in advance when and whether the rent for any apartment might be challenged in an FMRA, would effectively be required to maintain records indefinitely, thereby rendering constant the hardship that the Legislature intended to correct" (*Matter of Muller v New York State Div. of Hous. & Community Renewal*, 263 AD2d 296, 305 [2000]).

Nevertheless, in light of the legislative history, it is clear that the statutory prohibition against the DHCR's consideration of its records that are more than four years old was not intended to affect its determination with respect to an owner's claim of entitlement to a longevity increase. It is also apparent that under a literal application of the statutory language, it would be impossible for the DHCR to make a rational determination with respect to that issue without imposing on the owner a record-keeping obligation that is inconsistent with those statutory limitations. Since the overarching purpose of these provisions is the fair and reasonable implementation of the complex rent regulatory scheme established by the Legislature, the DHCR correctly harmonized these provisions, in a manner that does the least damage to the overall legislative intent, by refusing to be bound by the four-year restrictions in determining the owner's entitlement to a longevity increase.

### Major Capital Improvement Increase

■ The second component of the legal regulated rent calculation that is in issue here is the owner's claim of entitlement to a major capital improvement increase. Pursuant to Rent Stabilization Code § 2522.4 (a) (1), "[a]n owner is entitled to a rent increase where there has been . . . installation of new equipment or improvements . . . provided in or to the tenant's housing accommodation" (9 NYCRR 2522.4 [a] [1]). The amount of that increase "shall be 1/40 th of the total cost, including installation" (9 NYCRR 2522.4 [a] [4]).

The burden of establishing entitlement to a major capital improvement increase rests upon the owner (*see Matter of*

*Charles Birdoff & Co. v New York State Div. of Hous. & Community Renewal*, 204 AD2d 630 [1994]). While the statutes and regulations are silent with respect to the manner in which a major capital improvement is to be established, the DHCR has, in its policy statements, provided that an owner may establish entitlement to such an increase on the basis of the kind of documentary evidence that was submitted by the owner here (*see* DHCR Policy Statement 90-10). Nevertheless, even though the owner submitted copies of cancelled checks contemporaneous with the completion of the work, as well as copies of invoices and receipts, all in accordance with the DHCR's policy statement, its claim was partially rejected by the DHCR on the basis of the inspector's report.

The regulations are silent with respect to the impact of an actual inspection of the premises on an application for a major capital improvement increase. There is nothing in the applicable statutes or regulations, however, that precludes the DHCR from basing its determination on an inspection. Indeed, we have sustained the DHCR's reliance on the reports of its inspectors in the related context of an owner's claim that he had restored certain services, the discontinuance of which had been the basis for a reduction in the legal regulated rent (*see Matter of Sherman v Commissioner, N.Y. State Div. of Hous. & Community Renewal*, 210 AD2d 486, 487 [1994]). These authorities, however, do not address the question that is presented here, which is whether it was arbitrary and capricious for the DHCR to reject the owner's otherwise sufficient proof of the improvements solely because an inspection several years later did not uncover improvements that, by their nature, are not susceptible of proof by visual inspection.

The Court of Appeals defined the "arbitrary and capricious" standard in *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County* (34 NY2d 222 [1974]), characterizing the standard as "relat[ing] to whether a particular action should have been taken or is justified . . . and whether the administrative action is without foundation in fact" (*id.* at 231). "Arbitrary action is without sound basis in reason and is generally taken without regard to the facts . . . [T]he proper test is whether there is a rational basis for the administrative orders" (*id.* [internal quotation marks omitted]). Relying on its holding in *Matter of Weber v Town of Cheektowaga* (284 NY 377, 380 [1940]), the Court of Appeals further defined rationality as being "[sup-

ported] by proof sufficient to satisfy a reasonable [person], of all the facts necessary to be proved in order to authorize the determination" (*Matter of Pell v Board of Educ., supra* at 231; *see Matter of Weber v Town of Cheektowaga,* 284 NY at 380, *supra*).

Applying here the rationality standard outlined by the Court of Appeals, the DHCR's determination, to the extent that it relied on the inspector's report as evidence with respect to items of repair that could not be observed on a visual inspection, was indeed "unsupported by proof sufficient to satisfy a reasonable [person], of all the facts necessary to be proved in order to authorize the determination" (*Matter of Pell v Board of Educ., supra* at 231; *see Matter of Weber v Town of Cheektowaga, supra* at 380). The inspector's failure to see improvements such as "new plywood was installed in the kitchen," "new walls with sheetrock" in the kitchen, "new ceramic wall tiles," "new walls with sheetrock . . . in bedroom," and a new door frame in the living room does not constitute proof that those improvements were not done several years earlier. Because the documentary evidence submitted by the owner in support of these improvements was otherwise sufficient in accordance with the DHCR's policy, the DHCR acted irrationally in denying the owner's claim to the extent that it did so on the basis of the inspector's report.

In contrast, the issue raised by the balance of the owner's major capital improvement claim that was denied by the DHCR—the installation of a new sheetrock bathroom ceiling and the painting of the apartment, and changing of the outlet switches constituted repair or maintenance—is clearly an issue committed to the discretion of DHCR (*see Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal, supra*). There is no basis to disturb that exercise of discretion here.

## Treble Damages

■ Finally, the owner contends that the DHCR improperly imposed treble damages. The treble damages provision upon which DHCR's decision was based is found in Rent Stabilization Law § 26-516 (a). Consistent with the explicit statutory language, the burden is on the owner to establish that the overcharge was not willful (*see Matter of Maya Realty Assoc. v Holland,* 261 AD2d 405 [1999]; *Matter of Chu v New York State Div. of Hous. & Community Renewal,* 231 AD2d 567 [1996]; *Matter of Branch v State Div. of Hous. & Community Renewal, Off. of Rent Admin.,* 217 AD2d 581, 581 [1995]). Where the

owner fails to carry that burden, treble damages are properly imposed (*see Matter of Gattiboni v Aponte,* 188 AD2d 434, 435 [1992]). Since the DHCR found here that the owner failed to carry that burden, our review is limited to determining whether there is "record support and a rational basis" for that determination (*Matter of Century Tower Assoc. v State of N.Y. Div. of Hous. & Community Renewal,* 83 NY2d 819, 823 [1994], *supra*).

In support of its claim that the overcharge was not willful, the owner argues that, having submitted proof of the improvements in accordance with the DHCR's protocol, it had no reason to believe that that portion of the improvement claim would be denied. Similarly, because it had no reason to know that a review of the rent records back more than four years would be permitted, the owner had no reason to be concerned about the recalculation of the legal regulated rent on the basis of a nine-year longevity increase. These arguments are without merit.

Contrary to the owner's argument, the DHCR does not act arbitrarily or capriciously, at least in the absence of other relevant proof, by imposing treble damages on the basis of an overcharge resulting from the owner's failure to establish its entitlement to a major capital improvement increase (*see Matter of Jewnandan v Commissioner, N.Y. State Div. of Hous. & Community Renewal,* 275 AD2d 415 [2000]; *Matter of Maya Realty Assoc. v Holland, supra*; *Matter of Pandora Enters. v New York State Div. of Hous. & Community Renewal,* 239 AD2d 348 [1997]). There is no other evidence here.

The owner essentially argues that treble damages should not have been imposed because the limitation it perceived in the DHCR's ability to address its claim should have been sufficient to allow the owner to obtain a rent increase to which it was not legitimately entitled. It hardly requires analysis to reject this claim. It certainly cannot be said that the DHCR acted irrationally in doing so. The DHCR's determination to impose treble damages here is, at a minimum, consistent with the conclusion that the owner collected an illegal rent and then attempted to justify that illegal rent on a basis it knew was contrary to the facts. This is a quintessential basis for the imposition of treble damages. Courts have found a rational basis for the imposition of treble damages in cases where the owner's willfulness appears far less clear (*see Matter of Gandler v Halperin,* 232 AD2d 637 [1996]; *Matter of Goldstein v New York State Div. of Hous. & Community Renewal, Off. of Rent Admin.,* 226 AD2d 722 [1996]; *Matter of Lavanant v State Div. of Hous.*

& *Community Renewal*, 148 AD2d 185, 190 [1989]). The DHCR, therefore, did not act arbitrarily or capriciously in imposing treble damages here.

Accordingly, on the court's own motion, the notice of appeal is deemed to be an application for leave to appeal, and leave to appeal is granted. The order is modified, on the law, by deleting the provision thereof granting the petition, vacating the order of the Commissioner and remitting the matter to the Division of Housing and Community Renewal with directions to consider certain material and refrain from considering other material, and substituting therefor a provision granting the petition only to the extent of vacating so much of the order of the Commissioner as declined to allow major capital improvements on the basis of the inspector's report; as so modified, the order is affirmed, without costs or disbursements, and the matter is remitted to the Division of Housing and Community Renewal to recalculate the amount of the legal regulated rent, the overcharges and treble damages.

PRUDENTI, P.J., H. MILLER and KRAUSMAN, JJ., concur.

Ordered that on the court's own motion, the notice of appeal is deemed to be an application for leave to appeal, and leave to appeal is granted; and it is further,

Ordered that the order is modified, on the law, by deleting the provision thereof granting the petition, vacating the order of the Commissioner of the Division of Housing and Community Renewal and remitting the matter to the Division of Housing and Community Renewal with directions to consider certain material and refrain from considering other material, and substituting therefor a provision granting the petition only to the extent of vacating so much of the order of the Commissioner of the Division of Housing and Community Renewal as declined to allow major capital improvements on the basis of the inspector's report; as so modified, the order is affirmed, without costs or disbursements, and the matter is remitted to the Division of Housing and Community Renewal to recalculate the amount of the legal regulated rent, the overcharges and treble damages.